CROPLEY (UNITED STATES v.). See Case No. 14,892.

---

## Case No. 3,416.

CROPPER et al. v. COBURN et al.

[2 Curt. 465.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1855.

INJUNCTION TO SHERIFF — LEVY ON FIRM PROPERTY—CONCURRENT JURISDICTION.

1. The fifth section of the act of March 2, 1793 (1 Stat. 334), which forbids this court to grant an injunction to stay proceedings in a state court, does not restrain it from enjoining a sheriff from levying on the property of A. on a process against B.

[Cited in U. S. v. Collins, Case No. 14,834; Daly v. Sheriff, Id. 3,553; Perry v. Sharpe, 8 Fed. 23.]

2. A court of equity will enjoin the levy of an execution against one partner, on property of the firm, in which it is admitted he has no interest which can pass by a sale; and this, though the bill does not pray for a dissolution.

[Examined in Peck v. Schultze, Case No. 10,895.]

3. If the law of the state has provided for relief at law in the state courts, which equity

alone could previously give, this does not affect the equitable jurisdiction of the courts of the United States.

[Applied in Frazer v. Colorado Dressing & Smelting Co., 5 Fed. 164.]

4. If an officer attach and take possession of personal property of a firm in Massachusetts, on a writ against one partner who has no equitable interest in such property, he is a trespasser.

5. Semble, the Revised Statutes of Massachusetts (chapter 90, §§ 73–76) do not apply to attachments of partnership property, but only to the property of part owners, who are tenants in common.

This was a suit in equity by two partners, to enjoin the creditor of one of them, and also the sheriff, from laying or continuing an attachment on property of the firm. The bill was demurred to. So much of the bill as was material to the points raised is as follows: "John Cropper, of Nottingham, in the kingdom of Great Britain, and a citizen and subject of said kingdom, and an alien, and Francis Hemsley, of New York, in the state and district of New York, and a citizen of said state of New York, bring this their bill against Daniel J. Coburn, of Boston, and Joseph Butterfield, of Lowell, both in the state and district of Massachusetts, and both citizens of said state of Massachusetts. And thereupon your orators complain and say, that on or about the year 1849, your complainants formed a copartnership under the style of Hemsley & Cropper, and that said firm has ever since dealt in laces, embroideries, and other goods in the said city of New York, and as such copartners, on the twentieth day of January, 1855, were the owners of certain merchandise, of the value of ten thousand dollars, a schedule of which is hereto annexed, marked A, and which your complainants pray may be taken as a part of this their bill of complaint, which was stored by the said Hemsley & Cropper in the United States warehouse, in said Boston. And your complainants further say, that the respondent, Joseph Butterfield, sued out of the clerk's office of the court of common pleas for the county of Suffolk, a writ directed to the sheriffs of the several counties of said state of Massachusetts or their deputies, and bearing date January 20th, 1855, and returnable to the term of said court to be holden at Boston, aforesaid, on the first Tuesday of April, 1855, against the said Francis Hemsley, for a private debt and liability of the said Hemsley to the said Butterfield, and on the same day placed the same in the hands of the defendant Coburn, for service, then and ever since a deputy of the sheriff of the county of Suffolk. And your complainants further say, that the said Coburn, by virtue of said writ, on the said twentieth day of January, 1855, attached and seized the merchandise aforesaid, property of said firm of Hemsley & Cropper, and removed the same from the possession and control of your complainants, and still holds the same under said attachment. And

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

your complainants further say, that large claims and debts, and liabilities, are outstanding against said firm of Hemsley & Cropper, and more than sufficient to absorb all the partnership property of said firm, and the interest of said Hemsley in said copartnership, and that after the payment of said partnership debts and liabilities, no surplus or interest in said copartnership will remain to the credit of the said Hemsley, and that the merchandise so as aforesaid attached, is required to pay and discharge the debts and liabilities of said copartnership, and that your complainant, John Cropper, is solvent. And the complainants further say, that the merchandise attached by said Coburn, is daily diminishing in value, and if not soon sold, will become unsalable and valueless. And your complainants further say, that they have frequently applied to the said respondents, and informed them that the said Hemsley had no interest in said merchandise or in said copartnership after the payment of its debts and liabilities, and requested the said defendants to restore said merchandise to the possession of your complainants, but the respondents refused so to do. And your complainants well hoped that no disputes would have arisen touching the said merchandise and the property in the same, but that the said defendants would have complied with the reasonable request of your complainants, as in conscience and equity they ought to have done. And your complainants further say, that said defendants sometimes allege and pretend that said Hemsley has an attachable interest in said copartnership, and that a large surplus will remain to the said Hemsley after the payment of the partnership debts and liabilities of said firm. Whereas, your orators charge the contrary thereof to be the truth. To the end, therefore, that the said defendants may, upon their several and respective oaths, full, true, direct, and perfect answer make to all and singular, the matters hereinbefore stated and charged as fully and particularly as if the same were hereinafter repeated, and they thereto severally interrogated, and that an account may be taken of the assets and liabilities of the copartnership, and that the interest of Hemsley in said copartnership may be ascertained, and that said defendants and their agents may be restrained from selling or otherwise disposing of said merchandise, so as aforesaid attached, and that said attachment may be dissolved, and that the defendants may be decreed to deliver up and return said merchandise to your complainants, discharged of said attachment, and to pay to your complainants damages for the attachment and removal of said merchandise, and the injury your complainants have thereby sustained, and that your complainants may have such other and further relief in the premises, as the nature of their case shall require, and to your honors shall seem meet. May it please your honors to grant unto your complainants the most gracious writ of subpoena of the United States of America, to be directed to the said Daniel J. Coburn and Joseph Butterfield, thereby commanding them at a certain day and under a certain pain therein to be specified, severally to be and appear before your honors in this honorable court, and then and there to answer all and singular the premises, and to stand to perform and abide such order and decree therein, as to your honors shall seem meet and your orators shall ever pray."

Hutchins & Wheeler, for complainants.
Mr. Dean, contra.

CURTIS, Circuit Justice. The first question is, whether this court is restrained from granting the injunction prayed for, by that clause of the fifth section of the act of March 2, 1793 (1 Stat. 334), which provides, "nor shall a writ of injunction be granted to stay proceedings in any court of a state." The gist of the complainants' bill is, that under process against Hemsley, the creditor and the sheriff have taken property in which he has no equitable interest whatever; and that the aid of a court of equity is needful to ascertain that he has no interest therein, and to protect the real owner.

It must be admitted that an attachment on mesne process, out of a state court, which the sheriff is authorized by that process to make, is a proceeding in a court of a state, within the meaning of this act of congress; for the word "proceedings" may properly include all steps taken by the court, or by its officers under its precepts, from the institution of the suit to the close of the final process which may issue thereon.

But it is equally clear, that an attachment on mesne process, which the sheriff was not authorized by that process to make, is in no sense a proceeding of the court from which such process issued. Thus, if a sheriff under a writ of attachment against the property of A, should take his body, or the property of B, this would not be a proceeding of the court, but a mere trespass, for which any appropriate remedy may be instantly sought in any court having jurisdiction. And, accordingly, it was held, in Slocumb v. Mayberry, 2 Wheat. [15 U. S.] 1, that though the state courts could not interfere with seizures made by officers of the United States, for breaches of laws of the United States, yet, where, under authority to seize a vessel, an officer seized the cargo with the vessel, the owner might at once bring replevin in a state court. As Chancellor Kent has expressed it in 4 Comm. 410: "If a marshal of the United States under an execution in favor of the United States against A, should seize the person or property of B, then the state courts have jurisdiction to protect the person, or property so illegally invaded; and it is to be observed that the jurisdiction of the state courts in Rhode Island was admitted by the

supreme court of the United States, in Slocumb v. Mayberry [supra], upon this very ground." Yet this is but the converse of the question we are considering; for the state courts can no more interfere with the proceeding of the courts of the United States, than the latter can with the former. McKim v. Voorhies, 7 Cranch [11 U. S.] 279. Property attached on mesne process which does not authorize its seizure, is not in the custody of the law, and such attachment is not a proceeding of the court out of which the process issues.

The real question is therefore, whether on a writ against Hemsley alone, the sheriff was authorized to attach the property of an insolvent firm of which Hemsley was a member, in which property, it is admitted by the demurrer, he had no equitable interest. The manner in which individual creditors may attach or levy on the property of a firm in which their debtor is a partner, has given rise to much discussion, and to some diversities of decision in the different states. The decisions are collected in 1 Hare & W. Lead. Cas. 454–478. It would be useless here to examine them, or display those diversities. The writ of attachment in the case under consideration is governed by the laws of Massachusetts; and in this state, since the case of Pierce v. Jackson, 6 Mass. 242, the law has been, as it respects personalty, that only the interest which may remain to the debtor after payment of the partnership debts and of any balance he may owe to the firm, can be attached by his creditor. Allen v. Wells, 22 Pick. 453. Accordingly, it was held in Blanchard v. Coolidge, 22 Pick. 155, that where a partner had no interest in the stock except a share of expected profits, and there had been no profits, he had no attachable interest, and trover would lie against the attaching officer. The case of Peck v. Fisher, 7 Cush. 386, points out the distinction, as held in Massachusetts, between real and personal estate. This makes the validity of the attachment depend upon the ultimate interest of the debtor; and as it is admitted in this case, he had no such interest, and that nothing would pass by a sale of it, it follows that the attachment was unlawful.

I am aware that in some other states, the tenancy in common which exists at law among copartners, is alone considered at law; and that a court of law will execute its process on partnership property, as if the partners were tenants in common merely, leaving the purchaser and the other partners or the creditors of the firm, to adjust their relative rights in a court of equity. But, as I understand, this has not been the law of Massachusetts in reference to personal estate; and a creditor who attaches, or levies on property of a partnership, in which his debtor, though a member of the firm, has no substantial interest, is a trespasser.

This being so, it is argued, that the complainants should have resorted to an action at law, by which they had a complete remedy. But it must be remembered, that though it is now admitted by the demurrer, that Hemsley has no interest, when the bill was filed it did not appear that it might not be necessary to have an account taken, to ascertain this fact. Indeed, it may still prove to be necessary; because, if the demurrer be overruled, the defendants may answer, and deny what they now, for the purposes of the demurrer, admit.

When it is necessary to take such an account, which a court of law has only very inadequate means of doing, and which, in trespass or trover, can only be taken, by and before a jury in Massachusetts (Whitwell v. Willard, 1 Metc. [Mass.] 216), there is not an adequate remedy at law; and if equity has jurisdiction on this ground, it is not defeated by an admission made by the defendant in the course of the suit, which renders an account unnecessary. If it were, the defendant could admit the plaintiff out of court.

It is further insisted in support of this ground of demurrer, that the Revised Statutes of Massachusetts (chapter 90, §§ 73–76), provide a complete remedy at law, by enabling the copartner to give a bond to the officer, to pay to the attaching creditor, the appraised value of his debtor's share of the property attached.

I think it extremely doubtful whether this statute can be made to apply to attachments of copartnership property. The value of a share of a tenant in common is generally capable of being ascertained without much difficulty. But, as has already been said, it is only the interest which may remain to the debtor as a partner, after payment of the partnership debt and any balance due from him to the firm, which the creditor can attach; and how is it possible for appraisers to fix the value of this interest? Their action must be founded on the merest conjecture. It would seem, that these provisions must be understood as limited to the case they speak of, namely, part owners, as distinguished from partners. But, however this may be, it is very clear that no law of a state can force an alien, or a citizen of another state, in a controversy with citizens of Massachusetts, to forego a remedy which would otherwise exist in equity, under the constitution and laws of the United States. When the judiciary act (1 Stat. 73) speaks of a plain, adequate, and complete remedy at law, it refers to the common law, not the statutes of the states. Robinson v. Campbell, 3 Wheat. [16 U. S.] 212; Bodley v. Taylor, 5 Cranch [9 U. S.] 191; U. S. v. Howland, 4 Wheat. [17 U. S.] 108; Boyle v. Zacharie, 6 Pet. [31 U. S.] 648. The equity jurisdiction of the courts of the United States is the same in all the states. Besides, the statute has no application to a case where the defendant in the action has no attachable interest. I am of opinion, the bill shows a case in which this court has jurisdiction.

But the defendants still deny that upon the allegations of this bill the plaintiffs are entitled to relief, because a court of equity will not interpose to restrain a creditor from proceeding at law, to levy his execution on partnership property; it will allow him to work out his legal remedy by a sale, and then interpose and have an account taken and the equities adjusted. Chancellor Kent so held in Moody v. Payne, 2 Johns. Ch. 548, and he adheres in his Commentaries (3 Comm. 77, note) to the correctness of this decision, as the result of the authorities; though he admits that the more fit and suitable rule of practice would seem to be, to have the adjustment of the partnership account precede the sale. Mr. Justice Story (Story, Partn. 380) concludes that this is in fact the practice, according to the decisions. And of this opinion was the chancellor of New Jersey, in Cammack v. Johnston, 1 Green, Ch. [2 N. J. Eq.] 163; and the same opinion is held in Ohio (Place v. Sweetzer, 16 Ohio, 142), and seems to be entertained in Maine (Thompson v. Lewis, 34 Me. 167). Without expressing any opinion on what Chancellor Kent calls "this litigious subject," it is only necessary to observe, that in this case, it being admitted by the demurrer that the debtor partner has no interest, the decision in Moody v. Payne does not apply. The question there made was, whether a court of equity would restrain the sale, till the quantum of interest should be ascertained. If there be no interest on which to levy, there is no right to proceed at law against the property. And where, as in Massachusetts, an attachment on mesne process may be made, and the property taken into the possession of the sheriff, and kept for months, and even years, before a judgment is rendered, it would be a hardship indeed, if the firm were obliged to await a sale of that which has no existence, in a case where, as here, the debtor partner has no interest. The firm and its creditors are no more compelled to await a sale before applying to equity for relief, than before bringing an action of tort at law, in a case where the officer is a trespasser.

It is objected that this bill contains no prayer for a dissolution. Speaking generally, a court of equity will not take an account between partners, during the continuance of the partnership. The reason is, that the balance will probably fluctuate while the business continues. But this rule though admitted to exist, (and Sir John Leach denied it altogether in Harrison v. Armitage, 4 Madd. 143; and Richards v. Davies, 2 Russ. & M. 347,) is but a general rule, to which some exceptions have been made, when necessary to conform the practice of the court to the wants of its suitors, and to prevent a failure of justice. The cases on this subject are reviewed by Lord Chancellor Cottenham in Wallworth v. Holt, 4 Mylne & C. 619, and more recently by Lord

Langdale in Richardson v. Hastings, 7 Beav. 307. The result of all the cases in their judgment is, that the rule which denies the assistance of the court, where a dissolution is not prayed for, is not of universal application.

In my opinion, it does not apply to the case at bar. Where the court is asked to order an account between partners, in order to determine, whether, at the time of the attachment, the partner proceeded against at law by his creditor had any beneficial interest in the property attached, the same reason for refusal to proceed, does not exist, as in case of a suit between partners, where the object is, to ascertain their relative rights, with a view to decreeing the payment of a balance by one to the other. The creditor attaches the interest of one partner as it exists at the time of the attachment. Subsequent changes in the relations of the partners, inter sese, or in the rights of creditors, which are only substituted rights of the partners, are not necessary to be ascertained.

The objection that the court would be doing but incomplete and temporary justice, is inapplicable. For the object in hand, the inquiry would be final, and its result not affected by the subsequent continuance of the business of the firm. The contrary rule would put it in the power of any creditor of an individual partner, to force a dissolution of the firm by making an attachment of part of its property; or to deprive the firm of all remedy in equity, for the ascertainment, upon a bill by the firm, of the just rights of the attaching creditor, or of the purchaser on execution. Suppose a creditor who has purchased on execution, the beneficial interest of a partner in certain property of the firm, files his bill for an account, to ascertain what that interest was. Can he force a dissolution? I apprehend not. And if not, I do not perceive why the court may not interpose on the application of the firm, to take a similar account for the same purpose. Especially should this be so, in a case like the present, where the demurrer admits, that the debtor partner had no interest, and consequently, as the case is now presented, no account is to be taken.

The demurrer is overruled, and the defendants must answer.