VIRGINIA, T. & C. STEEL & IRON CO. et al. v. HARRIS.

(Circuit Court of Appeals, Fourth Circuit. February 13, 1907.)

No. 690.

1. COURTS—UNITED STATES COURTS—ADOPTION OF PRACTICE OF STATE COURTS—JUDGMENT—POWER TO VACATE—STATE STATUTE.

The power conferred on judges by Code N. C. 1883, § 274 (Revisal 1905, §§ 512, 513), to set aside a judgment after the term at which it was rendered, and within one year, when rendered against a party through his mistake, inadvertence, surprise, or excusable neglect, by virtue of the conformity statute, Rev. St. § 914 [U. S. Comp. St. 1901, p. 684], may be exercised by a federal court sitting in that state in an action of ejectment. McDowell, District Judge, dissenting, holds that such power is an equitable one and can only be exercised by a federal court through a plenary suit in equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 934.]

2. JUDGMENT—VACATION—GROUNDS.

A court is justified in setting aside a judgment against a defendant in ejectment taken during the absence of himself and his counsel, on the ground of mistake, inadvertence, or surprise, where his counsel left the court during the term at which the judgment was rendered with the un-understanding and belief that the case was not to be tried at that term, and where a prima facie valid defense is shown.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 706.]

In Error to the Circuit Court of the United States for the Western District of North Carolina.

Charles A. Moore (Moore & Rollins and Bullitt & Kelly, on the brief), for plaintiffs in error.

Locke Craig (J. M. Gudger, Sr., on the brief), for defendant in error.

Before GOFF, Circuit Judge, and WADDILL and McDOWELL, District Judges.

GOFF, Circuit Judge.  This case was heretofore presented to this court, on questions other than those now involved.  80 Fed. 228, 25 C. C. A. 382.  The disposition of the motion to set aside the judgment complained of by the defendant in error raises questions of great practical importance, and but for one fact the contention of the plaintiff in error would not be without merit.

The defendant in error moved the court below to set aside the judgment, so far as it related to him, theretofore rendered in favor of the plaintiff in error.  The original litigation was instituted in the year 1888, the plaintiff seeking to recover possession of a tract of land containing about 57,000 acres.  Among the many defendants was the defendant in error, who claims about 250 acres of said land.  He had filed his answer and his defense bond before the judgment now sought to be set aside was entered.  The judgment was rendered June 24, 1896, and the motion to vacate it was made June 11, 1897.  Such proceeding to vacate was had under the provisions of the Code of North Carolina, reading as follows:

"The judge may likewise, in his discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited, or by an order to enlarge such time; and may also in his discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding: and whenever any proceeding taken by a party fails to conform in any respect to this code, the judge may, in like manner and upon like terms, permit an amendment of such proceeding, so as to make it conformable thereto."  Code N. C. 1883, § 274.

The insistence that the provisions of the North Carolina Code were not applicable, and that they were erroneously applied in the proceedings under consideration, is, in our judgment, without force.  Prior to the enactment of section 914, Rev. St. U. S. [U. S. Comp. St. 1901, p. 684], the rule may have been otherwise, but since the enactment of that legislation, certainly in actions of ejectment, it has been held that the practice, pleadings, and forms adopted in the states, by virtue of state legislation, should, in cases coming within their purview, govern procedure in the courts of the United States held in such states respectively.  Equator Co. v. Hall, 106 U. S. 86, 1 Sup. Ct. 128, 27 L. Ed. 114; Smale v. Mitchell, 143 U. S. 99, 12 Sup. Ct. 353, 36 L. Ed. 90; Travelers' Protective Ass'n v. Gilbert, 111 Fed. 269, 276, 49 C. C. A. 309, 55 L. R. A. 538, and cases cited.

We find nothing in the record that justifies us in holding that the facts as found by the court below were not in every particular sustained by the evidence offered, and even if the contention of the plaintiff in error should be sustained, that other and additional facts were authorized by such evidence and should have been found by the court, still admitting such facts as duly found, nevertheless we would be impelled to the conclusion that the judgment complained of is without error, for even with such additional facts the original judgment against the defendant in error should not in good conscience be permitted to stand.  Harris had not neglected his case, but had employed counsel and tendered his pleas, and, while it is true that his counsel were ab-

sent during the trial to the jury, still it is clearly shown that they were present and in attendance upon the court during the term at which the case was tried, and that they left the court believing that the claim of the defendant in error would not be disposed of during that term. As to this there is no controversy, and, this being true, it would be unconscionable to hold the defendant in error bound by the judgment that was, as we think, improperly entered against him. It is this fact —that counsel for defendant in error, who were present seeing to his interests, left the court believing that while the case was to be tried so far as the title and boundry of the plaintiff was concerned, and not as to the claims of the defendant in error, which were to be subsequently heard as counsel understood it—that takes from the case of the plaintiff in error the strength it would otherwise have, and makes it our duty to affirm the judgment of the court below.

While it is true that a party seeking to have a judgment set aside because of mistake, inadvertence, surprise, or excusable neglect should show a prima facie valid defense, we think it sufficiently appears from the motion made by defendant in error, and the papers properly considered therewith, that he has made such showing when he sets forth the grants under which he claims, and alleges adverse possession of the land in controversy for over 20 years, such grants being prior in date to those under which his adversary claims.

McDOWELL, District Judge. In this case a judgment in ejectment rendered in the court below in 1896 was on motion, made after the end of the term, and on ex parte affidavits, set aside in 1906 on the ground of excusable neglect. There are several reasons which lead me to regard the decision below as erroneous; but, for want of seasonable objection, such reasons cannot properly be here considered. The point of greatest interest is as to the propriety of the procedure below. As there was no objection on this score until the decision of the trial judge had been announced, especially as this cause was brought here on bill of exceptions and writ of error, I do not dissent from the conclusion reached by the majority. See Highland v. Strickley, 116 Fed. 852, 854, 855, 54 C. C. A. 186, and authorities cited. I do not, however, concur in the reasoning of the majority, and the great practical importance of the question discussed in the opinion of the court seems to afford a reason for the following discussion.

The procedure below is held to have been authorized by the North Carolina statute (section 274, Code N. C. 1883; section 512, 513, Revisal 1905) quoted in the opinion of the court. This statute, as I understand, gives to the state judges a power which, prior to the adoption of the Code, could in North Carolina have been exercised only by the chancery courts of that state, and which, since the adoption of the Code and prior to the enactment of this statute, could have been exercised only in a plenary and independent action. Moore v. Hinnant, 90 N. C. 163; Clemmons v. Field, 99 N. C. 400, 6 S. E. 790, 6 Am. St. Rep. 529.

That a recent state statute, such as this is, does not, under section 723, Rev. St. U. S. (enacted in 1789) [U. S. Comp. St. 1901, p. 583],

supply the adequate remedy at law which defeats the federal equity jurisdiction seems to be clearly settled. McConihay v. Wright, 121 U. S. 201, 206, 7 Sup. Ct. 940, 30 L. Ed. 932; Robinson v. Campbell, 3 Wheat. 212, 222, 223, 4 L. Ed. 372; Cropper v. Coburn, 2 Curt. 465, 6 Fed. Cas. 871; Missouri Co. v. Elliott (C. C.) 56 Fed. 772, 775; Alger v. Anderson (C. C.) 92 Fed. 696, 700; Pokegama v. Klamath (C. C.) 96 Fed. 34, 55, 56; Natl. Co. v. State Bank, 120 Fed. 593, 603, 56 C. C. A. 657, 61 L. R. A. 394.

Bearing in mind the language of article 3, § 2, of the federal Constitution, the language of the first judiciary act (Act Sept. 24, 1789, 1 Stat. 78, c. 20, § 11), and of the first section of the judiciary act of 1875, we have before us the warrant for the often-repeated statements of the Supreme Court that the jurisdiction of the federal Circuit Courts (so far as we are now concerned) is only of "cases at law or in equity." That neither the conformity act of 1872 (section 914, Rev. St.) nor the "rule of decision" statute of 1789 (section 721, Rev. St. [U. S. Comp. St. 1901, p. 581]) applies here is abundantly settled, unless it be because the nature of the judgment of 1896 (being in ejectment in effect) renders the application and proceedings to set it aside (for excusable neglect) a common-law cause, or a trial at common law. Unless it be for this distinction between the case at bar and Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797 (in the light of Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013; Hickman v. Fort Scott, 141 U. S. 415, 418, 12 Sup. Ct. 9, 35 L. Ed. 775; Rio Grande Co. v. Gildersleeve, 174 U. S. 603, 609, 19 Sup. Ct. 761, 43 L. Ed. 1103; and Tubman v. B. & O., 190 U. S. 38, 39, 23 Sup. Ct. 777, 47 L. Ed. 946), I am satisfied that the learned majority of this court would not have concluded to affirm the decision of the trial court on the ground stated.

There are undoubtedly some common-law powers over judgments at law of a previous term vested in the federal law courts (Pickett v. Legerwood, 7 Pet. 144, 8 L. Ed. 638), exercised by motion in lieu of writ of error coram vobis, and by way of correction by nunc pro tunc orders. The case at bar, of course, does not fall under either head. It is founded on excusable neglect, and is, under the English and settled federal theory, an equitable ground for relief. It follows that the power to afford relief from a judgment at law of a former term on such ground is an equitable power, derived originally by the English chancellor from the absence or inadequacy of the powers of the English law courts. 11 Ency. Pl. & Pr. 1168; Albers v. Whitney, 1 Story, 310, Fed. Cas. No. 137. That the power of a federal Circuit Court to afford equitable relief can be exercised only according to the regular federal equity procedure will be more fully discussed hereafter. It is, of course, a mere question of mode of procedure in a sense; but if the case made at the bar below was in its essential character a case in equity, there will be no trouble, as I think, in establishing the fact that such a case cannot properly be instituted and conducted as this one was.

The state statute gives to the state judge a power which was, prior to the adoption of the Code in that state, as it has always been in the

federal courts, an equity power, to be exercised only by the regular equity procedure. Can this statute make the appeal to and the exercise of such power a common-law case in a federal court in that state? To hold that it can, seems to me equivalent to saying that a recent statute can confer on the federal courts the power to give distinctly equitable relief otherwise than according to the regular federal equity procedure. It amounts to saying that an equity cause in a federal court can by recent state statute be converted into a law cause. By section 914, Rev. St., the procedure in civil causes, other than equity (and admiralty) causes, is conformed to the state procedure. By section 721, Rev. St., laws of the state (which are rules of property) are rules of decision in trials at common law. Clearly the mere fact that the applicant for relief below did not proceed according to the established equity procedure did not convert his cause into a common-law cause. To my mind its essential character, and not the mode he adopted to present and litigate it, must be considered to ascertain if it be a common-law cause and hence within the meaning of either of these statutes. When an applicant for relief from any judgment at law of a past term (whether in ejectment or in debt) bases his application in a federal court on excusable neglect—a distinct equitable ground—he stamps his case, in a federal court, as a "case in equity."

The authorities cited as supporting the proposition that the North Carolina statute, in connection with section 914, Rev. St., authorizes the proceeding below, are Republic Co. v. Williams, 3 Biss. 370, Fed. Cas. No. 11,707, Brown v. Railroad (C. C.) 9 Fed. 183 (both of which are, in this connection, of too slight value to call for discussion), and Travelers' Ass'n v. Gilbert, 111 Fed. 269, 276, 49 C. C. A. 309, 55 L. R. A. 538 (citing Deweese v. Reinhard, 165 U. S. 386, 17 Sup. Ct. 340, 41 L. Ed. 757, and Folsom v. Ballard, 70 Fed. 12, 16 C. C. A. 593). Deweese v. Reinhard, 165 U. S. 386, 17 Sup. Ct. 340, 41 L. Ed. 757, and Folsom v. Ballard, 70 Fed. 12, 16 C. C. A. 593, are so clearly not in point here that they need not be discussed. Travelers' Ass'n v. Gilbert, 111 Fed. 269, 277, 49 C. C. A. 309, 55 L. R. A. 538, seems to me in this connection of exceedingly slight value. What is there said in regard to section 914, Rev. St., is, I think, to be properly treated as a dictum, not necessary to the disposition of the case, and the discussion—if such it can be called—of the question before us is as follows:

"These provisions of the statutes of Arkansas, by force of the conformity act of 1872 (Rev. St. 1878, § 914), are applicable to and govern procedure in the federal courts in cases coming within their purview."

The subsequent statement that the state statute affords an adequate remedy at law and defeats the federal equity jurisdiction to set aside a judgment (on an insurance policy) for fraud does not seem to me to be of much interest or of great weight in the case before us. It is contradictory of McConihay v. Wright, 121 U. S. 201, 7 Sup. Ct. 940, 30 L. Ed. 932, and other authorities cited supra; and it seems impossible to reconcile it with National Surety Co. v. State Bank, 120 Fed. 593, 603, 56 C. C. A. 657, 61 L. R. A. 394—a later decision by the same court.

As a mere matter of authority, it would seem that the Supreme Court opinions in Bronson v. Schulten (1881) 104 U. S. 410, 417, 26 L. Ed. 797, and in the many later cases affirming the language there used, are of greater weight in the present discussion. No essential difference is perceived, so far as the meaning of section 914, Rev. St., is concerned, between a recent state statute and a course of decision in the courts of a state in respect to the power of the law courts over final judgments or decrees of a former term. If section 914, Rev. St., applies at all, it embraces a procedure created by course of state court decision as well as a procedure created by state statute. Bronson v. Schulten differs from the case at bar, in so far as the application of section 914, Rev. St., is concerned, only in the fact that the action of the trial court in setting aside a judgment at law of a former term on motion was based apparently in part on a course of state court decision, and that the judgment there attacked was for money. It is said:

"The question relates to the power of the courts, and not to the mode of procedure. It is whether there exists in the court the authority to set aside, vacate, and modify its final judgments after the term at which they were rendered; and this authority can neither be conferred upon nor withheld from the courts of the United States by the statutes of a state or the practice of its courts."

And the language used in this opinion has been too often since repeated and affirmed by the Supreme Court to treat it as a mere inadvertent dictum.

To say that either section 721 or section 914 applies in the case at bar seems to me, with the greatest deference, to be assuming to be true the very point at issue. Either or both of these federal statutes may apply if the case at bar is a common-law case. Neither applies, in so far as the proper mode of proceeding is concerned, if the case at bar is a case in equity.

But Equator Co. v. Hall, 106 U. S. 86, 1 Sup. Ct. 128, 27 L. Ed. 114, and Smale v. Mitchell, 143 U. S. 99, 12 Sup. Ct. 353, 36 L. Ed. 90, are cited as authority against my contention. These two cases are exactly similar in principle. In both the question was as to a right to a new trial in ejectment, given as of right by state statute. In both cases the ground of the decision is that the state statute in question is a rule of property, a rule by which the state guards the transfer of title to real estate. To my mind there is a radical distinction between a state statute giving as of right a new trial in ejectment and one giving a court of law the right to set aside a judgment after the end of the term on equitable grounds. The statutes in the two cases mentioned are in practical affirmation of the common-law rule that a judgment in ejectment is not final; they are rules of property; they fall directly under the provisions of section 721, Rev. St.; they would have been as fully operative in the federal courts before as since 1872; and they are in no sense state statutes conferring powers which, under the English and federal systems, are equitable powers. The North Carolina statute above quoted is strictly a "state practice statute," as it authorizes the state judge, under a procedure unknown

in the English and federal equity practice, to annul a judgment on equitable grounds. It gives the state judge a jurisdiction or power which is equitable in nature, to be exercised in a mode not admissible (as will be more fully shown hereafter) in the federal equity courts. The statutes in both the cases cited related only to actions for land, while the North Carolina statute relates to any judgment or order. The fact that the judgment which in the case at bar was set aside happened to be a judgment in ejectment does not seem to me to bring the case at bar under the rulings in the above-cited cases. It is the nature of the state statute, the inherent and essential character of the jurisdiction or power given by the statute, and not the nature of the judgment sought to be set aside, which furnishes the test of its applicability in the federal courts. The judge who is granting a new trial in ejectment as of right under a state statute is exercising a common-law power; the judge who is, after the term, setting aside a judgment, even if in ejectment, for excusable neglect, is exercising (in a federal court) an equitable power. And, unless state statutes can confer power on the federal chancellor to exercise equity powers in a mode unknown to the English and federal courts, I cannot perceive That Equator Co. v. Hall, and Smale v. Mitchell, apply in the case at bar.

As the state statute here applies to mistake, inadvertence, surprise, or excusable neglect of a party, an application for relief under it in 'a federal court seems to me to be as clearly an "equity cause" when the improper judgment at law of a former term is one rendered in an action for real estate as when it is one rendered for money. As a mere matter of authority the federal decisions, holding that equitable defenses cannot be set up in actions for land in the federal courts, in states where by statute such defenses are available, go further than is necessary. See Langdon v. Sherwood (1888), 124 U. S. 74, 84, 8 Sup. Ct. 429, 31 L. Ed. 344; Doe v. Roe (C. C. 1887), 31 Fed. 97, 99, and cases cited; Davis v. Davis, 72 Fed. 81, 83, 18 C. C. A. 438. The multitude of cases holding that equitable rights cannot be asserted in a federal court on its law side, or in law cases, or according to common-law procedure, seem to me all-sufficient.

Can the position be maintained that the federal courts in setting aside a judgment at law of a former term on the ground of excusable neglect of a party have a discretionary power to do so on motion and affidavits? While the federal chancellors have undoubtedly some discretion, as to this particular matter I am led to believe that both on authority and reason the answer to the question above propounded should be in the negative.

The case below was heard on oral pleadings, or on no pleadings. In Windsor v. McVeigh, 93 U. S. 274, 283, 23 L. Ed. 914, it is said:

"So a departure from established modes of procedure will often render the judgment void. Thus, the sentence of a person charged with felony, upon conviction by the court, without the intervention of a jury, would be invalid for any purpose. The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the chancellor. And the reason is that the courts are not authorized to exert their power in that way."

In Phillips v. Negley, 117 U. S. 665, 675, 6 Sup. Ct. 901, 905, 29 L. Ed. 1013, it is said:

"It is equally well established by the decisions of this court that the appropriate remedy for relief against judgments at law, wrongfully obtained, is by bill in equity, * * *."

In Railroad v. Adams, 180 U. S. 28, 38, 21 Sup. Ct. 251, 255, 45 L. Ed. 410, it is said:

"Motions are generally appropriate only in the absence of remedies by regular pleadings, and cannot be made available to settle important questions of law, or to dispose of the merits of the case."

In Cameron v. McRoberts, 3 Wheat. 592, 593, 4 L. Ed. 467, it was decided that the federal chancellor has not the power to set aside a decree of a former term on motion. In Bank v. Moss, 6 How. 31, 37, 38, 12 L. Ed. 331, a judgment at law rendered at the November term, 1841, was on motion set aside at the ensuing May term, on the ground that the court did not have jurisdiction to render the judgment. Admitting the force of the contention that the record did not affirmatively show that the trial court had jurisdiction to render the original judgment, it was held by the Supreme Court that it was error to set aside the judgment of a previous term on motion, and the order setting aside the judgment was reversed. For citation to many of the federal cases citing and following Cameron v. McRoberts, supra, see 1 Rose's Notes, 804, and 1 Supp. (Rose's Notes), 77. Some of the latter cases affirming Bank v. Moss, in addition to those hereinabove cited, are: Schell v. Dodge, 107 U. S. 629, 630, 2 Sup. Ct. 830, 27 L. Ed. 601; Crames v. Hawley (C. C.) 50 Fed. 319, 320; Craven v. Railroad (C. C.) 62 Fed. 170, 171; Ins. Co. v. Pelzer, 76 Fed. 479, 481, 22 C. C. A. 283; Dick v. Wichelman (C. C.) 106 Fed. 637, 108 Fed. 961, 48 C. C. A. 164; City v. Ins. Co., 107 Fed. 52, 46 C. C. A. 144. See, also, Ex parte Washington R. Co., 140 U. S. 91, 96, 11 Sup. Ct. 673, 35 L. Ed. 339; Gaines v. Rugg, 148 U. S. 228, 242, 13 Sup. Ct. 611, 37 L. Ed. 432.

As the question before us is one as to the power of the federal "chancellor," in an equity cause, to adopt an informal procedure, and as sections 914, 721, and 723 do not apply, I am unable to perceive that Bronson v. Schulten, supra, Phillips v. Negley, supra, and the numerous other Supreme Court opinions and decisions hereinabove cited or referred to, do not furnish binding authority for saying that the procedure below was unauthorized. As a matter of reason, it is hard to conceive of any kind of equity litigation which more clearly demands the regular procedure of bill, demurrer, answer, exceptions, replication, and examination and cross-examination of witnesses than does an application to set aside a judgment at law on the ground of excusable neglect, made after the term of its rendition. And if this is true in any case it is particularly applicable to the case at bar, where the hearing was had over nine years after the rendition of the judgment. The duty of the chancellor in such cases is usually not free from difficulty, and the summary method of disposing of such litigation on motion and affidavits has a strong tendency to bring about erroneous and improper decisions. One great value of the use of a

regular bill in equity in such cases is that a case for relief must be shown by the bill. And the ruling on a demurrer may speedily bring the litigation to a just and final conclusion, without the expense of taking testimony. One of the advantages of answer is that the only supposed ground of defense thus set up may on exception be held insufficient, and thus again the litigation may be properly, speedily, and inexpensively brought to an end. The difference between ex parte affidavits and regularly taken depositions, or oral examination and cross-examination under Equity Rule 67, is too plainly in favor of the latter methods to need statement. In fact, every reason exists why in such cases the regular procedure alone should be tolerated.

It seems to me to follow that this court should not affirm the decision below on the ground stated in the majority opinion.

I am not unmindful of the fact that the federal courts in equity causes do (not by force of any federal statute, however) give effect in matters of substantive right to state statutes such as are rules of property. But this fact does not at all involve the idea that a case in equity may in a federal court be instituted or proceeded with otherwise than according to the settled federal equity procedure.

Affirmed.