## WELLMAN v. BETHEA.

(District Court, E. D. South Carolina. April 10, 1914.)

COURTS (§ 340*)—FEDERAL COURTS—POWER TO VACATE JUDGMENT—CONFORMITY STATUTE.

Rev. St. § 914 (U. S. Comp. St. 1901, p. 684), requiring "the practice and pleadings, forms and modes of procedure in civil actions" to conform as near as may be to those existing at the time in the courts of the state, does not render a state statute, conferring on the courts of the state power to set aside their judgments and decrees at any time within one year after their rendition, applicable to the federal courts, and in general a federal court has no power to entertain a motion to set aside a judgment after the term at which it was rendered.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 900; Dec. Dig. § 340.*]

At Law. Action by Sarah S. Wellman, in her own right and as widow of Ora E. Wellman, against John C. Bethea, administrator of John H. Bethea, deceased. On motion by defendant to vacate judgment. Motion denied.

Mitchell & Smith, of Charleston, S. C., for plaintiff.

Gibson & Muller, of Dillon, S. C., and Willcox & Willcox, of Florence, S. C., for defendant.

CONNOR, District Judge. This is a petition, or a motion, in the cause by defendant, seeking relief from a judgment rendered herein at the special January term, 1913. The motion is based upon the provisions of section 225, Code of Civil Procedure of South Carolina, which provides that:

"The court may likewise, in its discretion, and upon such terms as may be just * * * at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding, taken against him," by "surprise, or excusable neglect, and may supply an omission in any proceeding."

Defendant contends that, under the statute (section 914, U. S. Rev. Stat. [U. S. Comp. St. 1901, p. 684], 4 Fed. Stat. Anno. 563), power to grant this motion is conferred upon the federal courts which provides that:

"The practice, pleadings, and forms, and modes of proceeding in civil causes, * * * in the Circuit * * * Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts * * * of the state within which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The motion is resisted by plaintiff, insisting that the terms "practice, pleadings and forms and modes of procedure" refer only to those steps which are taken prior to, and at the trial of, civil actions; that the statute does not confer power upon the federal courts to vacate, set aside, or modify their judgments after the adjournment of the term at which they are rendered. It is insisted that the relief demanded upon this motion pertains to power and not procedure, and that this is vested in the equitable jurisdiction of the court and can be invoked only by an original suit in equity.

It appears from the record herein that the plaintiff sued defendant, as clerk of the court of Dillon county, in this district, and "as the duly qualified administrator of the estate of John H. Bethea, deceased." She states, as her cause of action, that the defendant's intestate wrongfully and unlawfully caused the death of her husband while in the state of Delaware, whereby, according to the statutes in force in that state, she became entitled to sue for and recover the damages sustained by her, by reason of the wrongful and unlawful act of defendant's intestate. She sued for $25,000 damages, alleged to have been sustained, etc.

Defendant, in his answer, admitted that his intestate caused the death of plaintiff's husband and denied that plaintiff was entitled to recover the amount of damages demanded. Neither the complaint nor the answer contained any averment in regard to the amount of assets which went into the hands of defendant, or the disposition thereof. When the cause came on for trial, defendant's counsel consented that the jury, then impaneled, should return a verdict fixing plaintiff's damage at $4,000. Upon this verdict judgment was rendered. by the. court that:

"Said Sarah C. Wellman, the plaintiff, recover of said John C. Bethea, clerk of court, as administrator of the estate of John H. Bethea, deceased, the sum of $4,000, so found, with $30 cost."

Upon this judgment an execution was issued and returned unsatisfied except to the extent of $28 "collected from John C. Bethea, administrator." Plaintiff, thereupon instituted an action against defendant and the Atlantic Insurance Company, surety on his bond "as clerk of the court and as administrator." In her complaint, plaintiff sets up the aforesaid judgment. She alleges that, after defendant "had knowledge and notice of plaintiff's claim and suit," one M. Helen Medlin brought suit against him as administrator of John H. Bethea for an alleged demand of $1,440, due by said John Bethea, for board, etc., and that defendant permitted judgment to be rendered against him for said demand and paid the full amount thereof from the assets in his hands as administrator. She alleges that defendant wrongfully paid such judgment, and, "by reason of the further fact that said defendant did not plead plene administravit or insufficient assets to the suit of this plaintiff, the said defendant is personally liable to the full amount of said judgment of $4,000 with interest." No devistavit is alleged other than the payment of said judgment. This second action is based upon the theory that the judgment in this action, in the absence of a plea of plene administravit, fixes defendant

with assets to the full amount of the judgment and the failure to pay same entitles her to a judgment against him and his surety for the full amount thereof. Defendant, in his affidavit herein, avers that he is advised that his failure to plead plene administravit fixes him with assets to the full amount of the judgment. He asks, in this motion, that the judgment be vacated or so modified that he may file an amended or supplemental answer, setting up the plea, and that, if issue is joined thereon, the same may be tried. He avers that his failure to file the plea was the result of excusable mistake. Plaintiff, resisting the motion, relies upon the principle that a federal court has no power to vacate or modify a judgment after the adjournment of the term at which it is rendered. Defendant concedes the general principle. He also concedes that the facts upon which he relies for relief do not bring the case within any of the exceptions thereto, but insists that the provisions of section 225, Code of South Carolina, confers power upon the court to grant the relief demanded.

In Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797, Mr. Justice Miller, after stating the principle that judgments are under the control of the court, which pronounces them, during the term at which they are rendered, or entered of record, and may be set aside, vacated, or modified, says:

"But it is a rule equally well established that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; * * * and this is placed upon the ground that the case has passed beyond the control of the court."

The learned justice gives an interesting history of the exceptions to the rule and others which "crept into practice in a large number of the state courts," saying:

"This practice has been founded in the courts of many of the states on statutes which conferred a prescribed and limited control over the judgments of a court after the expiration of the term at which it was rendered. * * * It can easily be seen how this practice is justified in courts of the states where a system has been adopted which amalgamates the equitable and common-law jurisdiction in one form of action, as most of the rules of procedure do. * * * The question relates to the power of the courts and not to the mode of procedure. It is whether there exists in the court the authority to set aside, vacate, and modify its final judgment after the term at which they were rendered; and this authority can neither be conferred upon nor withheld from the courts of the United States by the statutes of a state or the practice of its courts."

This case has been frequently cited and uniformly approved. Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013; Hickman v. Ft. Scott, 141 U. S. 415, 12 Sup. Ct. 9, 35 L. Ed. 775; Tubman v. B. & O. R. R., 190 U. S. 38, 23 Sup. Ct. 777, 47 L. Ed. 946.

In Re Metropolitan Trust Co., 218 U. S. 312, 31 Sup. Ct. 18, 54 L. Ed. 1051, Mr. Justice Hughes says:

"Nor could the court exercise the general power which it possesses to * * * set aside its orders or decrees prior to the expiration of the term at which the final decree is entered."

An examination of the decisions of the Circuit Courts and Circuit Courts of Appeal, with but two apparent exceptions, hereafter noted,

discloses a uniform agreement with Bronson v. Schulten, supra. It is not necessary to extend this opinion by quotations from the large number of decisions found in the Federal Reporter. They are cited and discussed in Judge McDowell's dissenting opinion in Virginia T. & C. Steel & Iron Co. v. Harris, 151 Fed. 430, 80 C. C. A. 658. In United States v. Wallace (D. C.) 46 Fed. 569, Judge Simonton (District Court of the Fourth Circuit) said:

"No court of the United States can revise or amend its own final decree or judgment for errors of fact or of law after the end of the term in which such decree or judgment was rendered"—citing, among other cases, Bronson v. Schulten, supra; Foster's Fed. Practice, § 379.

In Hughes, Fed. Proc. (2d Ed.) 412, it is said:

"While the federal courts will follow the state practice as to the mere form of the judgment, their control over it from that time forward is regulated by the federal decisions and statutes, and not by the state practice. They may correct the record, after the term, in mere clerical errors, but in no other way. Under the federal practice and decisions a judgment cannot be set aside after the term during which it is rendered, though the statute may provide summary remedies by motion for the purpose of regulating judgments in its own courts."

These authoritative decisions undoubtedly hold that the court has no power or authority to make any order affecting the validity or legal effect of a judgment after the adjournment of the term at which it is rendered. We are, however, confronted with the decisions in Va. T. & C. Steel & Iron Co. v. Harris, 151 Fed. 428, 80 C. C. A. 658 (C. C. A. 4th Cir.), which is a controlling authority, unless in conflict with decisions of the Supreme Court of the United States upon the same question, or unless it can be distinguished from the instant case. There, in an action of ejectment, judgment was rendered against defendant in error and, within one year thereafter, he applied to the same court to vacate the judgment for that it had been rendered against him by reason of excusable mistake or neglect on his part. The movant invoked, as authority in the court to entertain the motion, section 274, Code of N. C. 1883 (Rev. 1905, § 513). This statute is substantially the same as section 225, Code of South Carolina, and as statutes of like character enacted in other states. A careful examination of the opinion of Judge Goff, concurred in by Judge Waddill, gives force to the contention that the decision, as an authority, is to be construed as applicable only to an action of ejectment and should not, especially in the light of the decisions of the Supreme Court, be extended to judgments rendered upon other causes of action. The learned judge, writing the opinion, referring to the "insistence that the provisions of the North Carolina Code were not applicable," says:

"Prior to the enactment of section 914, Rev. St. U. S., the rule may have been otherwise, but since the enactment of that legislation, certainly in actions of ejectment, it has been held that the practice, pleadings, and forms adopted in the states, by virtue of state legislation, should, in cases coming within their purview, govern procedure in the courts of the United States held in such states respectively."

He cites Equator Co. v. Hall, 106 U. S. 86, 1 Sup. Ct. 128, 27 L. Ed. 114; Smale v. Mitchell, 143 U. S. 99, 12 Sup. Ct. 353, 36 L. Ed.

90; and Traveler's Prot. Ass'n v. Gilbert, 111 Fed 269, 49 C. C. A. 309, 55 L. R. A. 538.

The extent to which a decision of an appellate court is controlling or binding authority upon an inferior court is frequently difficult to determine. The principle seems to be that a decision of the Circuit Court of Appeals, of this circuit, upon the point, or question, presented upon this record, is authoritative, unless manifestly in conflict with a decision of the Supreme Court—a suggestion not to be adopted unless it so appears beyond reasonable doubt. The principle by which courts are governed in ascertaining the extent to which the decisions of other courts and courts of superior authority are conclusive and within the doctrine stare decisis is stated by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257, in which he says:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious."

Mr. Justice Curtis, in Carroll v. Carroll's Lessees, 16 How. 275, 14 L. Ed. 936, citing with approval the language used by the Chief Justice, says:

"There must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties."

In applying the foregoing language to the instant case, it is well to note the restrictive language used by Judge Goff. He says, "Certainly, in actions of ejectment," etc. The significance of this language is made manifest by referring to the cases cited by him. In Equator Co. v. Hall, 106 U. S. 86, 1 Sup. Ct. 128, 27 L. Ed. 114, it was held that, by virtue of a statute of the state of Colorado, applying only to actions of ejectment, a party against whom a judgment has been rendered is entitled, upon an application made at any time before the next succeeding term of the court, to have such judgment vacated without showing any cause therefor. The reasons upon which this statute is based, applying to the peculiar character of the action of ejectment, are clearly pointed out by Mr. Justice Miller. Referring to the action of ejectment, he says:

"This form of action, with its inconclusive results, would be the law in Colorado for the recovery of the possession of real estate, but for the statutes of that state. * * * The framers of those statutes, in abolishing the old common-law action of ejectment with its accompanying evils, and in substituting an action between the real parties, plaintiff and defendant, found it necessary to provide a rule on the subject of new trials in actions concerning the titles of land."

The learned justice concludes:

"We are of opinion that, when an action of ejectment is tried in a Circuit Court of the United States according to the statutory mode of proceeding, that court is governed by the provisions concerning new trials as it is by the other provisions of the state statute. There is no reason why the federal court should disregard one of the rules by which the state Legislature has guarded the transfer of the possession and title to real estate within its jurisdiction."

In Smale v. Mitchell, 143 U. S. 99, 12 Sup. Ct. 353, 36 L. Ed. 90, the same question was presented, upon the Illinois statute, giving the party against whom a judgment, in an action of ejectment, has been rendered, a right to have it set aside upon application in one year thereafter. Mr. Justice Field discusses the question, stating the reason upon which the state statute is founded and citing Equator Co. v. Hall, supra, reaching the same conclusion. In neither of these opinions is any reference made to the section 914, R. S. A careful examination of them discloses that they are based upon an entirely different principle of law confined, as the court is careful to say, to actions of ejectment. Judge Field, after stating the rule that at common law, by reason of the fact that it "proceeded upon a fictitious demise between fictitious persons, its determination decided nothing beyond the right of plaintiff at the date of the alleged demise," says:

"The law of Illinois changes this rule of the common law and makes a judgment in the action of ejectment conclusive as to the title established in such action upon the party against whom it is rendered and parties claiming under him, by title arising after the commencement of this action, subject to certain exceptions named"—citing the state statute giving the right to a second trial, etc.

It is because, under the statutes abolishing the common-law action of ejectment with "its inconclusive results" and providing that in actions for the recovery of land, the judgment shall fix the title, thereby making the judgment a muniment of title, that the federal courts, upon elementary principles of federal law, regard the statutes in such states, giving the absolute right to the party against whom the judgment is rendered, to have a second trial, as "a substantial right in that it increases the security of holders of real property, that in case their title to real property is brought into litigation it will be more fully examined and satisfactorily ascertained and established than by confining the parties to a single trial as in other controversies, except when another trial is ordered for cause." Adopting the language of Judge McDowell in respect to the principle upon which the Equator Co. and the Smale Cases are based, it is manifest that:

"The statutes in the two cases mentioned are in practical affirmation of the common-law rule that a judgment in ejectment is not final; they are rules of property; they fall directly under the provisions of section 721, R. S. [U. S. Comp. St. 1901, p. 578]."

It would seem manifest that these two cases, upon the authority of which the conclusion in the Harris Case is based, are not in conflict with the decision in Bronson v. Schulten, supra, and the cases in which it is cited and followed. It is not reasonable to suppose that the learned judges who decided and wrote the opinions in these cases, subsequent in date to the Bronson Case, and the enactment of section 914, R. S., overlooked it, or intended to overrule it. It is true that the North Carolina statute, relied upon to sustain the power to grant the motion in the Harris Case, is not restricted to actions of ejectment, nor does it confer the right to have a second trial as a matter of right. The statute is remedial, and it was within the power of the court to apply it to the facts in that case. Without questioning pro hac vice the correctness of the conclusion, reached by the court, in that case,

although vigorously questioned in an exhaustive and well-considered dissent by Judge McDowell, its scope should not be so extended as to bring it into conflict with an almost uniform current of authority in the federal courts. Certainly, if the learned and accurate judge who wrote the opinion had intended to question these decisions or announce a rule in the Fourth Circuit different from that prevailing in the other circuits, he would not have failed to say so—especially in view of the dissenting opinion in which all of the authorities are cited. I am constrained to reach the conclusion that the Harris Case is controlling authority in the Fourth Circuit, only upon a motion to vacate a judgment based upon the state statute, rendered in an action of ejectment. With this limitation upon that decision, I am of the opinion that this motion should be decided upon the authority of Bronson v. Schulten, supra, and later cases in which that authority is followed.

Defendant's counsel urge the language used by Judge Simonton in Bryce v. Southern Ry. Co. (C. C.) 129 Fed. 966. The facts in that case were peculiar and the observations of Judge Simonton, while always entitled to most respectful consideration, can hardly be regarded as the expression of an opinion upon the question presented here, especially in view of his unmistakable opinion expressed in United States v. Wallace (D. C.) 46 Fed. 569. The only other decision, which in any manner conflicts with the authorities cited is found in Traveler, etc., Co. v. Gilbert, 111 Fed. 269, 49 C. C. A. 309, 55 L. R. A. 538. In that case the question is discussed only as it bore on the right of the plaintiff to invoke the equitable power of the court to vacate the judgment. Conceding that the inference can be drawn from the decision that, in the opinion of the court, the state statute gave a complete and adequate remedy at law, it cannot be regarded, in the light of the decisions of the Supreme Court and other Circuit Courts of Appeals as a controlling authority on the question presented in this case. It is manifest that the case was decided on its merits, and that the observation of the judge in regard to the statute is obiter. Prior to the enactment of the statutes referred to, it was well settled that the court had no power to vacate or modify its judgments after the expiration of the term at which they were rendered. The judgment roll, when made up in accordance with the course and practice of the court, imported absolute verity, and all questions which were raised, or should have been raised, upon the pleadings, became res judicata.

After a careful and anxious consideration of the decided cases, I am constrained to conclude that I have no power, under section 225 of the Civil Code of South Carolina—and it is conceded that, if such power exists, it must be found there—to entertain the motion. I refrain from any expression of opinion in regard to the merits of the defendant's contention. Such relief as, upon the facts appearing upon the affidavits, he may be entitled to, must be sought by invoking the equitable power of the court. It has occurred to me that possibly, under the provisions of the New Equity Rules (Nos. 22 and 23; 198 Fed. xxiv, 115 C. C. A. xxiv), the motion, or petition, could be treated as a suit in equity, be docketed on the equity calendar, and proceed-

ed with in accordance with the practice and procedure in such cases. When, by the adoption of the Code of Civil Procedure in North Carolina, the mode of procedure 'was changed, the Supreme Court of that state sometimes treated an original action brought when under the reformed procedure a motion in the cause was the prescribed remedy, as such motion. This practice was adopted because of the radical change made in the mode of procedure. This indulgence to the want of familiarity by the members of the bar was discontinued and the provisions of the Code enforced. I could not, however, under the most liberal construction of the new rules, pursue the course suggested. The mode of instituting a suit in equity, by filing the bill, etc., has not been changed.

The motion is denied without prejudice to defendant's right to proceed in such way as he may be advised. The costs will be taxed against the defendant.