UNITED STATES (FEARSON v.). See Case No. 4,712.

---

## Case No. 15,082.

### UNITED STATES v. FEELY et al.

[1 Brock. 255.] [2]

Circuit Court, D. Virginia. May Term, 1813.

CRIMINAL LAW—RECOGNIZANCE—FAILURE TO APPEAR—FORFEITURE—POWER OF COURT TO SUSPEND.

Where an individual is charged with the commission of a criminal offence, and enters into a recognizance, conditioned to appear at a given day, and undergo his trial, which recognizance is forfeited by the failure of the party to appear and submit himself to the law; but the accused appears at the succeeding term of the court, the court in which the recognizance is filed has full power to suspend (or discharge?) it, for good cause shown by the accused, why he did not comply with the condition of the recognizance; the object of such a recognizance being, not to enrich the treasury, but to combine-

---

[1] [Reported by Hon William Cranch, Chief Judge.]

[2] [Reported by John W. Brockenbrough, Esq.]

the administration of criminal justice with the convenience of a person accused of a criminal offence, but not proved to be guilty.

[Cited in U. S. v. Duncan, Case No. 15,004.]

[Cited in Caldwell v. Com., 14 Grat. 705; State v. Hoeffner, 124 Mo. 488, 28 S. W. 7.]

At law.

Before MARSHALL, Circuit Justice, and TUCKER, District Judge.

MARSHALL, Circuit Justice. This is a motion made to stay proceedings on a scire facias, which has been sued out of this court, by the attorney of the United States, against Feely and his security, requiring them to show cause, why execution should not be had against them, on a recognizance entered into by them, conditioned for the appearance of the said Feely, on the first day of the last term, to answer an indictment filed against him in this court. Feely did not appear, and his default was recorded. He appeared on the first day of this term, and is now in custody, on the motion of the attorney for the United States.

It is contended, on the part of the United States, that the court possesses no power over this recognizance; that being forfeited, it has become a debt due to the United States, which is no more subject to the control of this court, than a debt upon contract.

It is admitted, on the part of the United States, that in England, the court of exchequer exercises this power. But the statutes of 33 Hen. VIII. (chapter 39), and of 1 Geo. II., expressly delegate it, and it is contended, that from these statutes alone, the authority of the court of exchequer is derived. Mr. Bacon, in his Abridgment (volume 2, p. 150), says, that it is by virtue of 33 Hen. VIII., that courts of exchequer discharge recognizances, and his opinion is certainly entitled to respect.

It is contended by the counsel for the prisoner, that these statutes are made in affirmance of the common law. For this there is no dictum in the books. But if they do not simply give a statutory form to a rule of the common law, there is reason to believe that they permit a principle to be exercised, directly and effectively, which was before not absolutely unknown to the court. They authorise a discharge, or a compounding of recognizances, and, perhaps, without them, recognizances could not be absolutely discharged or compounded. But it does not follow necessarily, that the same effect might not be indirectly produced by a perpetual suspension. It is apparent, that the power given by statute is conferred on the court of exchequer only; consequently, the power exercised by the courts of common law, is derived, not from the statute, but the common law.

It is admitted by the prosecutor, that the power which the courts of common law exercised over recognizances in England, may, in the United States, be exercised by this court. Let us, then, inquire what that power is? The attorney relies upon the case of Reg. v. Lord Drummond, 11 Mod. 200. In that case, a motion made on the day of appearance to discharge the recognizance, because the cognizor was sick and unable to appear, was overruled by the court, notwithstanding the consent of the attorney for the crown, because the court could not grant the motion; but the time for appearance was enlarged. The officers of the crown are generally sufficiently attentive to its interests, and it is somewhat extraordinary, that one of them should consent to release a debt, which debt was absolutely beyond the power of the court. The expression employed by the judge, may be used in reference to the propriety of the order. But, admitting it to import a positive legal inability to grant the motion, it will be recollected, that the motion was for an absolute discharge of the recognizance. A declaration, that the court could not discharge it, was not equivalent to a declaration, that the court could exercise no power over it. In fact, the court did proceed to relieve the party from his default, by extending the time for his appearance. If the court possessed no power over the subject; if, upon failure to appear, the debt, according to the terms of the recognizance, became absolute, and was placed beyond the power of the court, it would be difficult to support the order which was actually made. The case of Reg. v. Ridpath, 10 Mod. 152, does not bring into view the power of the court. It did not, in any degree, turn on that point. The case of Rex v. Tomb, 10 Mod. 278, is vaguely reported, and its circumstances are omitted. In that case, however, the principle is expressly laid down, that "judges of oyer and terminer are the proper judges whether recognizances ought to be estreated or spared;" that is, that the court in which the recognizance is filed, decides after default made, whether the attorney for the crown shall estreat the recognizance, in order to put it in suit. It will be recollected, that in England, the recognizances of this description are filed in a court of criminal jurisdiction, and sued, not in that court, but in the court of exchequer. "No instance," says the book (Rex v. Tomb), "can be produced, of a certiorari to remove a recognizance for appearance from a court of oyer and terminer. It would be to take away a jurisdiction that properly belongs to them." "It is for the advantage of public justice, that it should be in the power of justices of oyer and terminer to spare the recognizance, if, upon the circumstances of the case, they see fit." This, then, is an express decision, that the court in which the recognizance is filed, may, if, upon the circumstances of the case, they see fit, after default has been made, and the recognizance is forfeited, refuse to permit it to be estreated, in order to be put in suit. It is a question exclusively for their decision, and no other court will control or inquire into the propriety of that decision. This power remains so long as the recognizance remains in court. When once estreated, the recognizance

and all power over it are transferred to another tribunal.

In the United States, there is no separate court of exchequer; and recognizances are put in suit in that court in which they are originally filed. They are never estreated. The power which the courts of law in England exercise on the question, whether a recognizance shall be estreated or not, is exercised after default, and continues as long as the recognizance remains in court. It is dependent on the discretion of the court, and, according to Hawkins, is applied in relief of the cognizor, if the person who has forfeited it, shall appear at the next succeeding term and take his trial. The same power existing in this court may, it would seem, as in England, be exercised so long as the recognizance continues in court. If, when the default was recorded, it had been shown to the court that the accused was in custody of the law, then, according to the case in 11 Mod., the court might have extended the recognizance. Why may not the excuse be made as effectually at a subsequent day? The case of Rex v. Eyres, 4 Burrows, 2118, is also reported in a very unsatisfactory manner. It is not improbable that the case had been compromised in the court of exchequer. There is too much uncertainty in the report to rely much upon it.

The authority on which the court most relies is Mr. Blackstone. In his 4th volume (page 254) he says: "A recognizance may be discharged, either by the demise of the king, to whom the recognizance is made, or by the death of the principal party bound thereby, if not before forfeited, or by the order of the court, to which such recognizance is certified by the justices, (as the quarter sessions, assizes, or king's bench,) if they see sufficient cause." Upon authority, then it appears, that entirely independent of the statute, the courts of England exercise the power which this court is now required to exercise. It is not an unreasonable power. The object of a recognizance is, not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty. If the accused has, under circumstances which show that there was no design to evade the justice of his country, forfeited his recognizance, but repairs the default as much as is in his power, by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done. If the accused prove innocent, it would be unreasonable and unjust in government to exact from an innocent man a penalty, intended only to secure a trial, because the trial was suspended, in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned in the recognizance. If he be found guilty, he must suffer the punishment intended by the law for his offence, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a

trial. The reasonableness, then, of the excuse, for not appearing on the day mentioned in the recognizance, ought to be examined somewhere, and no tribunal can be more competent than that which possesses all the circumstances of the original offence, and of the default. Should the legislature think otherwise, the case may be provided for by statute. At present, the law is understood to be that this court possesses full power over the subject. All proceedings, therefore, on this recognizance may properly be stayed, until it shall appear whether the accused shall continue to submit himself to the law, or shall attempt to evade the justice of the nation. This recognizance will await the final trial of the cause. In the mean time, the court is of opinion, that an additional recognizance may be required, but not in such a sum as to amount to refusal of bail, or to be really oppressive. It is the direction of the court, that the prisoner stand committed until he shall enter into a recognizance himself, in the sum of $500, and one or more sureties in the same sum, conditioned as the law requires.