UNITED STATES v. JENKINS et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 887.

BAIL (§ 79*) — REMISSION OF PENALTY ON FORFEITED RECOGNIZANCE—FEDERAL STATUTE—POWER OF COURT.

An application to a federal court which has entered judgment on a forfeited recognizance in favor of the United States, for a remission of the penalty for which such judgment was rendered under Rev. St. § 1020 (U. S. Comp. St. 1901, p. 719), which gives the court power to remit the whole or any part of such penalty "when it appears to the court that there was no willful default of the party," is not a motion to vacate the judgment, and may be entertained after the term at which the judgment was entered.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 352; Dec. Dig. § 79.*]

McDowell, District Judge, dissenting.

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville.

Application by Walter Jenkins and J. E. Shuler for the remission of the penalty of a forfeited recognizance. From a judgment granting such relief, the United States brings error. Affirmed.

At the May term, 1894, of the United States District Court, at Asheville, judgment final was entered upon a forfeited recognizance in favor of the United States and against the defendants in the sum of $200. Execution was issued on the judgment in 1895 and returned nulla bona, and no other execution was issued until October 28, 1908, when execution was issued and placed in the hands of the United States marshal of this district for collection. The marshal was threatening to levy on and sell the lands of the defendants, when the defendants filed an affidavit in the cause, at the May term, 1908, of the District Court of the United States for the Western District of North Carolina, and entered a motion praying for an order restraining the marshal from proceeding further with the execution then in his hands and for the cancellation of said judgment.

The following are the facts upon which the court based its judgment: J. E. Shuler, who was surety for Walker Jenkins, filed an affidavit, in which he stated: "That the defendant Walker Jenkins was under bond for his personal appearance at the November term, 1894, of the United States District Court, at Asheville, and this affiant was his surety; that this affiant is advised, informed and believes that the said Walker Jenkins was sick at the November term, 1894, and unable to attend said term of the court, and that he was called out, and judgment nisi taken against the said Walker Jenkins and J. E. Shuler, his surety, in the sum of $200; that the defendant Walker Jenkins appeared at the next term of the court, it being the May term, 1895, and was tried and found not guilty and was ordered discharged; that affiant is advised, informed, and believes that after the said defendant Walker Jenkins had been discharged and told to go home, the judgment nisi was called up, and final judgment entered on the sci. fa. against said Walker Jenkins and this affiant; that this affiant never knew that judgment had been entered against the said Walker Jenkins until a few weeks ago, when the United States deputy marshal of this district informed affiant that execution had been issued on said judgment and that he had the same in his hands for collection, and he is now threatening to collect the same."

A. E. Holton, U. S. Atty. (A. L. Coble, Asst. U. S. Atty., on the brief), for the United States.

Thomas S. Rollins (Moore & Rollins, on the brief), for defendants in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before PRITCHARD, Circuit Judge, and WADDILL, and Mc-DOWELL, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). It is contended by counsel for defendant in error that the court below had the right to set aside the judgment rendered in this case, and the brief filed by counsel is in support of such contention. In assuming this position, we think that counsel for defendant in error failed to consider the provisions of section 1020, Rev. St. (U. S. Comp. St. 1901, p. 719). The rule in the federal court is that a motion to vacate or set aside a judgment must be made before the expiration of the term at which the judgment is rendered. Even if the court below had adopted the practice of the state courts in that respect, it did not have the power to vacate the judgment, inasmuch as under the practice in the state courts of North Carolina, such motion must be made within one year from the date of the rendition of the judgment. However, we do not think that this case comes within that class of cases wherein the remedy is by motion to vacate a judgment. Section 1020, Rev. St. (Federal Statutes Annotated), to which we have referred, reads as follows:

"When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

Thus it will be seen that this section gives the court the power, under certain circumstances, to remit the whole or a part of the penalty for which judgment may be rendered on a forfeited recognizance. This statute was enacted on the 28th day of February, 1839, and was evidently intended as a remedy for a surety in a case where there is no willful default of the party and where a trial of the cause can be or has been had. Before the enactment of this statute, Chief Justice Marshall had this question before him in the case of United States v. Feely, Fed. Cas. No. 15,082, but in that case the application was before the recognizance was estreated, and was, therefore, before judgment. However, the reasoning of that distinguished jurist shows that the court has the power before, as well as after, judgment to remit a penalty based upon a forfeited recognizance.

In note 3, p. 724, American and English Encyclopedia of Law (2d Ed.), in referring to the foregoing case, it is said:

"In U. S. v. Feely, 1 Brock. 255 [Fed. Cas. No. 15,082], Chief Justice Marshall, after a full discussion of the authorities, shows that the Court of Oyer and Terminer in England had, independent of any statute, the power to refuse to estreat recognizances which it had adjudged forfeited, and might remit the same whenever the circumstances of the case in their discretion justified it. In conclusion, he says: 'The authority on which the court most relies is Mr. Blackstone. In his 4th volume, page 254, he says: "A recognizance may be discharged, either by the demise of the King, to whom the recognizance is made, or by the death of the principal party bound thereby, if not before forfeited, or by the order of the court to which such recognizance is certified by the justices (at the Quarter Sessions, Assizes, or King's Bench) if they see

sufficient cause." Upon authority, then, it appears that, entirely independent of the statute, the courts of England exercise the power which this court is now required to exercise." This discussion of the authorities and the conclusion have been cited with approval in State v. Clifford, 124 Mo. 492 [28 S. W. 5]; State v. Warren, 17 Tex. 283. See, also, Colt v. Eaton, 1 Root (Conn.) 524; Noll v. State, 38 Neb. 587 [57 N. W. 285]; State v. Traphagen, 45 N. J. Law, 134."

In the case of United States v. Duncan, 25 Fed. Cas. No. 15,004, McCanless, District Judge, in construing section 1020, Rev. St., among other things, said:

"In the case of Com. v. Denniston, 9 Watts [Pa.] 142, the principle is recognized that a recognizance is a matter of record, and, when forfeited, it is in the nature of a judgment of record, and, when judgment is given, the whole is taken as one record. The right of the Governor, therefore, to remit cannot be affected by proceeding to judgment on the recognizance, as the nature of the recognizance remains the same after as before judgment. This being the case, the act of Congress affords us ample power in the exercise of a sound discretion to afford the relief prayed for. And as we are of opinion that the absence of the principal was no fault of the bail, and that he has done all in his power to repair the public injury by the surrender of the prisoner, he is entitled to the interposition of the court upon payment of the costs."

In that case, a sci. fa. was sued out on the 26th day of October, and served on Duncan the same day. No appearance or plea being entered, judgment nil dicit was entered with the clerk in the sum of $3,000. There is nothing in the record to show precisely when application in that case was made, but there is a headnote which shows that the decision was rendered in 1863. Therefore, it is fair to assume that application for relief was made long after the term of the court at which judgment was entered had expired.

In the case of United States v. McGlashen et al. (C. C.) 66 Fed. 537, it was held:

"That in an action on a forfeited recognizance, only a legal defense can be heard; and the fact that there was an appearance or discontinuance after forfeiture is not a legal defense, though it would constitute matter for application, under Rev. St. § 1020, to the court which adjudged the forfeiture, to have the penalty remitted."

In that case, the recognizance was forfeited in the District Court of the United States for the District of Kansas, but application for relief was made in the Circuit Court of the United States for the Eastern District of Wisconsin; and that court, therefore, held that it was without power to grant relief. The court said:

"It would constitute matter for an application, under section 1020, Rev. St., to have the penalty remitted, in whole or in part; but that must be addressed to the court which adjudged the forfeiture, and where alone is lodged a discretion to grant relief when it appears that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

This case was carried by writ of error to the Circuit Court of Appeals for the Seventh Circuit, where it was disposed of without passing upon the question as to the power of the court to remit the penalty after the term had expired at which the judgment was rendered.

In the case of United States v. Santos, Fed. Cas. No. 16,222, it

does not appear whether or not the term at which default was made had expired before application for relief was made by the surety; but it is fair to assume that, notwithstanding the default had been estreated, no final judgment had been entered thereon in the Circuit Court. However, it does appear that the defendant in that case answered to the indictment, but left without leave of the court before the trial was concluded. He was called and defaulted, and recognizance was duly estreated for the purpose of being prosecuted. The trial proceeded, inasmuch as he was only charged with a misdemeanor, and resulted in the acquittal of the defendant. Nelson, Circuit Judge of the Southern District of New York, holding a term of the Circuit Court for that district, and before whom this case was heard, said:

"This case is rather stronger in favor of the application than those contemplated in the statute. Here the trial has been had and the prisoner has been acquitted. The condition of the recognizance has been performed in fact, though not in contemplation of the law, for the defendant has stood the trial. The case being a misdemeanor, it was competent to proceed with the trial in his absence. Although it must be assumed that the default was willful, as it respects the prisoner, for aught that appears the bail is innocent, and he is the person most materially interested in the success of the motion. Under the actual circumstances of the case, I think that the breach of the condition of the recognizance is technical, and that it would be unreasonable to impose it. I shall therefore direct the default and estreat to be set aside."

In the case of United States v. Mercer et al., Fed. Cas. No. 15,758, it appears that judgment was entered in November, 1868, but it does not appear when the application was made. However, the headnote shows that the case was decided December 19, 1868. The court in that case recognized the right of the defendant to make application in pursuance of section 1020; but, in disposing of the matter, held: •

"That it appearing to the court that the defendant was guilty of the crime charged, and that the amount forfeited was not commensurate with the punishment deserved, that public justice required that the forfeiture should be enforced."

In the case of United States v. Winstead and Another (D. C.) 12 Fed. 50, heard by Dick, D. J., it appeared that Winstead, the principal, failed to appear and answer to a criminal prosecution, and a judgment was entered against him as surety on a forfeited recognizance upon which a scire facias was issued to the parties to show cause why execution should not be issued. The surety filed a plea stating that the defendant had died before service of the scire facias, and asked to be discharged from liability as bail. The court, in disposing of this motion, said:

"The entry of judgment nisi in this case at the last term was irregular. State v. Smith, 66 N. C. 620. A judgment nisi is one that is to be valid unless something else should be done within a given time to defeat it. When a witness is duly summoned to appear at court and fails to do so, a judgment nisi may be entered for the penalty imposed by law for such default; and upon being served with a scire facias he may show cause at a future day why the judgment nisi shall not be made absolute. If the witness should die before such judgment is made absolute, the proceeding abates and cannot be revived against his personal representative.

"A recognizance duly entered into is a debt of record, and the object of a scire facias is to notify the cognizor to show cause, if any he have, wherefore

the cognizee should not have execution of the same thereby acknowledged. State v. Mills, [19 N. C.] 552.

"The recognizance is in the nature of a conditional judgment, and the recorded default makes it absolute, subject only to such matters of legal avoidance as may be shown by plea, or such matters of relief as may induce the court to remit or mitigate the forfeiture. The death of a principal after such default, and before the service of a scire facias, does not entitle the bail as a matter of right to claim an exoneretur.

\* \* \* \* \* \* \* \* \* \* \* \*

"As the judgment in this case was joint, the execution must follow the judgment, and cannot be issued against a dead man's estate until his personal representative has had a day in court. I therefore direct a scire facias to be issued to the personal representative of the deceased principal, returnable to next term. When such scire facias has been duly served or returned, I will hear evidence and consider the question of modifying the forfeiture in accordance with the provisions of section 1020 of the Revised Statutes."

There is nothing in the record to indicate the term at which judgment was entered in the foregoing case. However, the court in that case treats the judgment on a forfeited recognizance as being absolute, and it is obvious from an examination of the opinion of the court that the term at which the judgment was entered had expired before the defendant made application for relief; and the court held that the facts were such as to entitle the defendant to make application in accordance with section 1020 of the Revised Statutes.

In the case of United States v. Barger (C. C.) 20 Fed. 500, heard by Acheson, District Judge, the application was treated as a motion to vacate a judgment, and it was held that a judgment or order, however conclusive in its character, is under the control of the court pronouncing it, during the term at which it is rendered; and that the same may be set aside, vacated, or modified; and, upon the ground that the court can correct, modify, or vacate a judgment during the term at which such judgment may be entered, relieve the party from liability upon payment of the costs. In that case the court said:

"The recognizance here was taken, not for the defendant's appearance for trial, which strictly seems to be the case contemplated by section 1020, but after trial and conviction, and was conditioned upon the defendant's appearance on the first day of the present (May) term to abide the sentence of the court. He did not appear then, but did subsequently during the term and was sentenced. The party making application for the remission is the bail, who certainly was guilty of no 'willful default,' however it may have been with the defendant himself. Public justice does not require the penalty to be enforced if the defendant pay his fine and costs. The case is within the spirit and reason of the said section 1020, and substantial justice will be subserved by remitting the forfeiture upon terms."

This court, in the case of United States v. Alonzo Robinson et al., 158 Fed. 410, 85 C. C. A. 520, considered the question involving the power of the court, in the exercise of its discretion, to grant relief under this section, but the question as to when application should be made was not determined in that controversy.

It is true the Attorney General in 1854 (6 Ops. Attys. Gen. 408), held:

"That when the proceedings have reached the final point of return of execution to judgment in scire facias they have passed beyond the stage at which the courts can remit, and the only relief which can be given to the parties is by pardon."

Notwithstanding this opinion the greater weight of authority is in conflict with the views entertained by the Attorney General in that case. In referring to this subject, the American and English Encyclopedia of Law (2d Ed.) p. 724, says:

"In the United States it has been held by eminent authority that such power existed at common law, of which the statutes were merely declaratory, and this power as a common-law right has been very generally exercised by our courts. In many states the matter has been made, as in England, the subject of special statutory provision."

In note 2, on the same page, is the following:

"At common law, where the recognizance has been forfeited and was sent to the exchequer, the party became an absolute debtor to the crown, but by statute that court was then empowered to discharge on petition any person whom it thought a fit subject to favor. 1 Chitty, C. L. 92; In re Pellero, 13 Price, 299; Rex v. Tomb, 10 Mod. 278."

Chapter 33, § 83, Battle's Revisal, which is now section 3220 of the Revisal of North Carolina 1905, provides as follows:

"The judges of the Superior Court may hear and determine the petition of all persons who may conceive they merit relief on a forfeited recognizance, and may lessen or absolutely remit the same and do all or anything therein as they may deem just and right, consistent with the welfare of the state and the persons praying such relief, as well before as after final judgment is entered and execution ordered."

It will be observed that this section empowers the court to remit or lessen forfeited recognizances, either before or after final judgment; and, in an application of this kind, it is within the judicial discretion of the court below, in a proper case, to remit the penalty; and, in the case of the Board of Education v. Moody, 74 N. C. 73, it was held that the action of the court in remitting the penalty under this section is not subject to review except for some error in matter of law or legal inference. This provision of the North Carolina statute is almost identical with the terms of section 1020, Rev. St., with the exception that it is more definite as to the time when application in pursuance of its provisions may be made. We find, upon examination of the decisions of the courts of the various states, that the weight of authority is to the effect that a court, wherein judgments of this kind are rendered, has judicial discretion to grant at any time the remission of penalties. While this provision of the North Carolina law is not controlling in this instance, inasmuch as Congress has seen fit to legislate upon the subject, nevertheless we feel that this statute should be considered in this connection, inasmuch as it tends to show the policy of the Legislature, as well as the courts, in dealing with this question. While neither the Circuit Court of Appeals of this or any other circuit, or the Supreme Court of the United States, have passed upon this question, yet some of the Circuit and District Courts have passed upon it, and are almost of one accord in sustaining the view that a proceeding under section 1020 for the remission of a penalty is not to be treated as a motion to vacate, modify, or set aside a judgment, and is, therefore, not subject to the rule that such application must be made during the term at which the judgment was entered. This legislation was evidently intended for the purpose of enabling

sureties situated as in this instance to obtain substantial relief by the payment of such costs as may have been incurred by the issuance of a scire facias, judgment, etc. There is every reason why such relief should be granted, and we know of no valid reason in support of the contention that sureties in cases of this kind should be required to pay into the registry of this court the entire penalty of a bond, when the requirements of such bond have been complied with, and the undertaking of the surety entered into in the first instance has been substantially performed. It is inconsistent with the principles of justice and equity to insist upon any other rule; and, while counsel seem to have prepared their briefs, as we have said, upon the theory that this is in the nature of a motion to set aside a judgment, evidently the court below had in mind section 1020, and, we think, under that section, had ample power to render the judgment it did.

That a surety, with the rarest exception, in a case where the defendant is produced, stands his trial and is acquitted, understands that such trial not only exonerates the defendant in so far as the charge against him is concerned, but likewise has the effect of releasing the surety from liability on his bond, is within the knowledge of every one familiar with proceedings in criminal cases. Under such circumstances, it is but natural that a surety, not being versed in legal procedure, should fail to file an answer to the sci. fa., and thus have the case regularly disposed of according to the strict rules of procedure. It is highly important that parties arrested and charged with crime should give bond rather than be confined pending a hearing at the expense of the government. If all the parties who have been arrested on charges of violating the Internal Revenue Laws had been confined in prison to await trial, the expense of such confinement would have been enormous; and, for several years after the enactment of these laws, we doubt very much if the government could have found accommodations for this class of defendants. Therefore, unless there is some way by which relief of this character may be afforded to sureties in cases wherein the default is not willful, and the trial of the accused has been, or can be, had, it would be well-nigh impossible for any defendant to secure bail when charged with a crime. The purpose in granting bail is to secure the prompt appearance of the accused at the term of the court at which his trial is to be had. This is the sole purpose sought to be accomplished, but, in a case like the one at bar (wherein it appears that the defendant was sick and unable to attend the term of court, and appeared at the next term of court, was tried and found not guilty), it would be unjust and inequitable to require the defendant to do more than pay the expenses and the costs incident to the sci. fa.; and, when a sum greater than that amount is exacted, under such circumstances, such judgment renders it possible for the government to take from the citizen such amount without the slightest justification, and we feel sure that there is no disposition on the part of the government to deprive a citizen of its property without compensation.

Chief Justice Marshall, in the case of United States v. Feely, supra, in referring to this view of the matter, said:

"The object of a recognizance is not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty. If the accused has, under circumstances which show that there was no design to evade the justice of his country, forfeited his recognizance, but repairs the default as much as is within his power, by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done. If the accused prove innocent, it would be unreasonable and unjust in government to exact from an innocent man a penalty, intended only to secure a trial, because the trial was suspended, in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned in the recognizance. If he be found guilty, he must suffer the penalty intended by the law for his offense, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a trial. The reasonableness, then, of the excuse, for not appearing on the day mentioned in the recognizance, ought to be examined somewhere, and no tribunal can be more competent than that which possesses all the circumstances of the original offense, and of the default."

Section 1020 is remedial in its character, and we must if possible construe the same so as to give full force and effect to the legislative intent; and thus afford the relief contemplated therein. While this section is not as broad in expressed terms as to when application may be made as the section of the North Carolina Revisal to which we have referred, yet it should be borne in mind that this statute contains no limitation as to the time when such application is to be made; and, from the very nature of things, being different in its character from the ordinary motion to vacate or set aside a judgment, cannot be treated as a motion of that character. At the time of the enactment of the section in question, the rules of procedure relating to motions to vacate or set aside judgments were well established, and the rights of parties clearly defined. The remedy afforded by this section does not undertake to authorize the court to vacate or set aside judgments of this character, but, on the other hand, its sole purpose is to empower the court to remit the whole or a portion of any penalty for which a surety may be liable upon a forfeited recognizance. Therefore, if it had been the intention to provide that the remedy was to be by motion to vacate or set aside a judgment, it would have been an easy matter for Congress to have said as much; but, inasmuch as the statute undertakes to vest the court with discretionary power, it was clearly the intention of Congress that the court should have the power to act whenever it was made to appear that an applicant under this section had brought himself clearly within the purview of the statute. At the time this statute was enacted, sureties had the right to move to vacate or set aside a judgment, and, if this was the only purpose for which the statute was enacted, it would, indeed, be a useless piece of legislation. Therefore, inasmuch as it was evidently the purpose of Congress to afford relief to all parties in cases like the one at bar, it necessarily follows that, in all such cases, application may be made at any time before property is sold under execution, and that it was the purpose of Congress in the enactment of this statute to give the court wherein such judgments are rendered control over the same, with full power, in its discretion, to remit the whole or a part of any penalty upon a forfeited recognizance, "when it shall appear to the court that there has been no willful default of the party, and that a trial can, not→

withstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced." No possible harm can come from the construction which we place upon this stat-. ute, inasmuch as all matters arising thereunder are to be passed upon by the judge of the court wherein forfeited recognizances are recorded, and it is but fair to assume that judges, in the exercise of their discretion, will amply protect the interests of the government when applications of this character are made.

For the reasons stated, we are of opinion that there is no error, and it necessarily follows that the judgment of the court below should be affirmed.

Affirmed.

McDOWELL, District Judge (dissenting). I find myself unable. to concur in the opinion of the court. Leaving out of view section 1020, Rev. St., for the present, the judgment sought to be reviewed appears to me to be one by which a judgment rendered over 13 years previously was in large part vacated and set aside on the ground of excusable neglect in failing to make defense to the scire facias. Section 513 of the North Carolina Revisal of 1905 reads as follows:

"Mistake, surprise, excusable neglect. The judge shall, upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, verdict, or other proceeding taken against him through mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding."

Waiving all question as to the time within which application for relief must be made under this statute, it seems to me settled that no state statute, adopted since 1789, can give to a federal common-law court power to vacate or modify its judgment of a former term for excusable neglect or other distinctly equitable ground for relief. The reason for this conclusion is set out at length in the concurring opinion in Virginia, etc., Co. v. Harris, 151 Fed. 428, 430, 80 C. C. A. 658 et seq., citing, inter alia, Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797. Reference is made to the foregoing state statute because this case was argued wholly without reference to section 1020, U. S. Rev. St.

The next question is whether or not section 1020, Rev. St., can be considered as giving the court in or to which a recognizance or bail bond is given or is returnable the power to remit all or a part of the penalty of the bond after the end of the term at which final judgment is rendered on the scire facias. To my mind this statute gives the court no power after the end of the term at which final judgment is rendered in the scire facias proceeding.

(1) It may be argued that there was no reason for enacting the statute if it relates only to the powers of the court at, or before, the term of trial of the scire facias proceeding. But this argument can be made with equal force as to any one of the numerous statutes which are merely declaratory of the common law. And it is not altogether improbable that the chief purpose of the statute was to emphasize the fact that the courts must not (at the trial term) remit the penalty where the default was willful.

(2) Authority for the contention that power to set aside a judgment after the end of the term of rendition is certainly not very profuse. U. S. v. Duncan, Fed. Cas. No. 15,004, seems to be the only case to which any importance can be attached. And the statement in that case to the effect that Chief Justice Marshall's reasoning in U. S. v. Feely, Fed. Cas. No. 15,082, "sanctions the exercise of the power as well after as before judgment" seems to me to be a misconception. That opinion relates only to the power of the court prior to final judgment on the scire facias. It seems to me to contain nothing indicating the existence of power in the Court of Exchequer (which alone rendered judgments on forfeited recognizances and bail bonds) to modify or vacate its judgments after the end of term of rendition.

(3) If the statute was intended to give the court power to relieve after the term of final judgment, it is to be noted that nothing in the statute forbids the exercise of the power although the court may previous to judgment have heard evidence pro and con, and although the judgment may be a judicial ascertainment of disputed questions of fact and not a default judgment. The motion or petition for relief in such a case is in effect also a petition for rehearing, which may be filed without notice and after any lapse of time. But it may be argued that the statute was intended to apply only to final judgments by default. No warrant for such theory is supplied by the statute itself; but if such assumption be entertained, we are driven to the very improbable theory that Congress contemplated and intended to relieve from the consequences of a double default—both the default in performance of the condition of the bond and the default on the scire facias. While it is true that the equity courts have power to relieve from judgments obtained by excusable neglect or mistake, it is difficult to conceive that Congress could have intended that the law courts could relieve for inexcusable neglect. Nor does it detract from the strength of this argument that the court below has seemingly adopted the inconvenient practice of calling the scire facias cases only after the last criminal trial of the term has been completed. There would seem to be no good reason why the scire facias cases should not be called on the first day of the term.

(4) It is too well settled to require discussion that the federal law courts, subject to some well-defined exceptions, have no power to vacate or modify a judgment after the end of the term of rendition of the judgment. It is therefore improper as it seems to me to construe a statute, which is either merely declaratory of the common law or which was intended to limit the common-law powers of the court, in such wise as to give the courts a very great increase of power. Again, it would be difficult to find any principle of law more highly esteemed and more generally accepted as wise than the rule giving finality to judgments. "Interest reipublicæ ut sit finis litium." And this fact assuredly argues against a construction which makes of section 1020 an ordinance to the effect that a judgment on scire facias on a forfeited bail bond shall have no finality.

(5) If Congress had intended that the power under this statute could be exercised after the end of the term of rendition of final judg-

ment on scire facias, assuredly some time limit would have been prescribed within which the application for relief must be made.

(6) If the intent was to authorize the court to give relief after the end of the term, the statute has in effect given principals and sureties in bail bonds a right to sue the government, and this by implication and without notice or process to any officer of the government being required.

(7) The language, "may remit the whole or a part of the penalty," used in the statute, is appropriate if relief granted prior to judgment on the scire facias was intended, and is very inappropriate as applied to relief granted after the term of rendition of judgment on the scire facias. If the intent were to authorize relief after the end of the term at which final judgment had been rendered, the only appropriate language would be "may vacate or set aside, in whole or in part, the judgment."

(8) It seems unnecessary to do more than suggest some of the consequences which might and probably would flow from construing this statute as authorizing relief after the term of final judgment, such as the surprises that might be suffered by the government, and the trickery which the belated exercise of the power would breed. Such consequences assuredly argue against the probability of an intent to bring them about, or even to make them possible.

The power given by this statute is discretionary, and it may be that this court has no power to review a judgment remitting a penalty, if exercised before the end of the term at which final judgment is rendered. See Morsell v. Hall, 13 How. 212, 215, 14 L. Ed. 117; Cook v. Burnley, 11 Wall. 672, 676, 20 L. Ed. 29; Steines v. Franklin Co., 14 Wall. 15, 22, 20 L. Ed. 846; authorities cited 1 Michie, U. S. Ency. 983–4. But if the construction hereinabove given the statute is correct, the judgment below was rendered by a court without jurisdiction, and no reason presents itself why this court should not decide that the trial court had no discretion and declare the nullity of the judgment. See In re Farmers' Loan & Trust Co., 129 U. S. 206, 215, 9 Sup. Ct. 265, 32 L. Ed. 656.