# UNITED STATES *v.* VON JENNY.

CRIMINAL LAW; STATUTES; PENALTIES; REMISSION OF FORFEITED RE-
COGNIZANCE; AFFIDAVITS.

1. Sec. 1020, Rev. Stat. U. S. Comp. Stat. 1901, p. 719, limiting the courts,.
   in the exercise of their discretion in remitting forfeited recognizances,
   to cases where it appears (1) that there has been no wilful default
   of the party charged; (2) that a trial can, notwithstanding, be had
   in the cause; and (3) that public justice does not require the penalty
   to be enforced, is merely declaratory of the common law.

2. Under sec. 1020, Rev. Stat., allowing the courts of the United States in
   their discretion, within certain limitations, to remit the whole or a.
   part of the penalty forfeited on any recognizance in a criminal cause,
   the limitation, "whenever it appears to the court that there has been
   no wilful default of the party," refers to the wilful default of the
   party charged with the offense.

3. Where one charged with crime becomes and continues a fugitive from
   justice, thereby wilfully defaulting in his recognizance, the supreme
   court of the District of Columbia, in which such recognizance is en-
   tered, is without power, under sec. 1020, Rev. Stat., to relieve against
   the forfeiture of the same, even though the surety therein, who is
   seeking relief, has made every effort to produce his principal for
   trial.

4. An affidavit of facts filed on a motion by the surety for the remission
   of a forfeited recognizance given by one who had become a fugi-
   tive from justice, must set out in detail the facts upon which the
   court is asked to act, and not a conclusion therefrom. And if the
   surety is a bonding company, engaged in the business of acting as
   surety for a premium, it should affirmatively appear in the affidavit
   that the company has not taken collateral security from the accused
   for its own indemnification; otherwise the relief of the surety might
   ultimately inure to the benefit of the principal.

5. *Quære* as to whether the power given courts of the United States by
   sec. 1020, Rev. Stat., to remit a forfeited recognizance, may be exer-
   cised after the expiration of the term at which the judgment of for-
   feiture was made final.

No. 2451. Submitted November 4, 1912. Decided December 30, 1912.

HEARING on an appeal by the United States, from an order of the Supreme Court of the District of Columbia sitting as a Criminal Court, vacating a judgment forfeiting a recognizance. *Reversed.*

The COURT in the opinion stated the facts as follows:

The United States appeal from an order vacating a judgment forfeiting a recognizance.

Joseph Von Jenny, being under indictment in the supreme court of the District of Columbia, on November 25, 1902, entered into a recognizance before said court, with the Citizens Trust & Guaranty Company, of West Virginia, as surety, in the sum of $1,500. The recognizance entered upon the minutes of the court is in the ordinary form, acknowledging indebtedness to the United States in said sum if the defendant fail to appear before said court from day to day and answer any indictment that may be brought against him, until finally disposed of, or if the defendant depart the court without leave. March 20, 1903, the defendant, Von Jenny, was arraigned and pleaded not guilty. On May 1, 1903, he failed to appear for trial, and judgment was entered for the United States for the amount of said bond, unless upon notice sufficient cause be shown to the contrary. A bench warrant for the arrest of the defendant, and scire facias to him and his surety, were ordered to be issued. Scire facias was served upon the surety on June 10, 1903, whereupon the judgment became final. Von Jenny was not apprehended. No attempt appears to have been made to execute the judgment on the recognizance. But on June 5, 1912, the Citizens Trust & Guaranty Company, of West Virginia, defendant therein, filed a motion in the supreme court of the District to remit and set aside the said forfeiture, and the penalties incurred thereby, and for cause therefor prays the court to read, as part of this motion, the affidavit annexed thereto and made a part thereof." This affidavit, made by one of the attorneys of record for the Trust & Guaranty Company, aforesaid, and not by an officer of same, makes the following statement in sub-

stance: That said attorney has been one of the attorneys of said corporation continuously since November 25, 1902, and is familiar with all the facts relating to said forfeiture, and the efforts of the corporation to apprehend Von Jenny and produce him for trial. That immediately after the attention of the corporation had been called to the failure of Von Jenny to appear for trial, it "endeavored by every means within its power, including the expenditure of a large sum of money, to wit, more than $1,000 on its own account," to track the movements of the said Von Jenny and secure his arrest and production before the supreme court of the District of Columbia for trial. That the corporation employed detectives to trace Von Jenny "from city to city, and from country to country," until it finally located him, July 2, 1903, in Belize, Honduras, and on the same day notified the United States attorney for the District of Columbia, and requested his immediate arrest. Thereupon the District attorney sent to the Department of Justice a copy of the indictment, a bench warrant for Von Jenny's arrest, and the evidence of his guilt in the form of affidavits of material witnesses, who had testified before the grand jury. Thereafter the State Department was requested by the Department of Justice to ask for the extradition of said fugitive, which request, with all the papers in the case, was denied; the Solicitor of the said Department having decided that the evidence was not sufficient to sustain the charges. That the corporation was in a position to deliver Von Jenny for trial, but was unable to do so by reason of the inability of the United States to make out a prima facie case against him, and that in doing so it has expended more than $1000. June 28, 1912, the court, upon consideration of the motion, granted the same, and the United States took this appeal.

*Mr. C. R. Wilson,* United States District Attorney, and *Mr. James A. Cobb* for the appellant.

*Mr. Wade H. Ellis, Mr. R. Golden Donaldson,* and *Mr. A. H. Ferguson* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The foundation for the remission of the forfeiture of the recognizance is sec. 1020, Rev. Stat. U. S. Comp. Stat. 1901, p. 719, which reads as follows:

"When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no wilful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

The question whether, without the authorization of a statute, courts of common law had the power to relieve against the forfeiture of a recognizance, was decided in the affirmative by Chief Justice Marshall in a case in the circuit court, *United States* v. *Feely,* 1 Brock. 255, Fed. Cas. No. 15,082. Sec. 1020 Rev. Stat., enacted thereafter, may be said to be declaratory of the common law, and was apparently enacted not only to settle any doubt in respect of the power of the courts, but also to fix certain limitations upon the exercise of the discretion committed. These are; First, that there shall have been no wilful default of the party; second, that a trial can, notwithstanding, be had in the case; Third, that public justice does not require the same penalty to be enforced. The party seeking relief must show facts bringing him within those limitations.

The government contends that the judgment is erroneous upon two grounds: (1) The facts alleged by the petition do not show a case within the limitations of the statute; (2) assuming the sufficiency of the showing made, the court had no power to set aside the judgment at a subsequent term.

The wilful default mentioned in the first limitation aforesaid must necessarily be that of the principal cognizor, whose appearance before the court for trial is the object of the recognizance. He must either give bail for his appearance, or re-

main in the custody of the marshal.   To secure him his liberty his surety voluntarily enters into the obligation of the recognizance.   He contracts with the government, in consideration of the release of the principal, that the latter shall appear at a specified time and place to answer the charge against him, and remain from day to day until discharged by the court.   The duties and powers of the surety in such an obligation have thus been declared by the Supreme Court of the United States: "When bail is given, the principal is regarded as delivered to the custody of his sureties.   Their dominion is a continuance of the original imprisonment.   Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. . . . They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue they must bear the burden of the consequences, and canno't cast them upon the obligee."   *Taylor* v. *Taintor,* 16 Wall. 366–372, 21 L. ed. 287–290.

The default of the principal cognizor was confessedly wilful; the affidavit of the surety shows that he was then, and has been continually since, a fugitive from justice.   The principal's default having been wilful, it would have been no defense to the rule to show cause why the forfeiture should not have been made final, that the surety, having permitted him to escape, had thereafter used diligence to secure his apprehension; nor would it be a defense that he may have arrested the defaulter, and have produced him for trial at a subsequent term of court.   Ibid. *United States* v. *McGlashen,* 66 Fed. 537, 538, and cases there cited.   For like reasons the subsequent voluntary or involuntary appearance of the principal would not bring him within the dispensation of the statute.   Of the cases that have been cited in opposition to the government's first contention, but one is directly in point.   *United States* v. *Traynor,* 173 Fed. 114.   This was a case in the district court, and holds not only that the forfeiture may be vacated at a subsequent term of the court, but also that it was a sufficient excuse to justify the remission of a part

of the forfeiture, that the principal had been subsequently arrested, convicted, and sentenced. The question of the power of the court to remit the penalty after wilful default was not discussed; the learned district judge merely observing: "As was said by Chief Justice Marshall in *United States* v. *Feely,* 1 Brock. 255, Fed. Cas. No. 15,082, it is not the object of a recognizance 'to enrich the Treasury.'" It is quite true that revenue is not contemplated in taking a recognizance; the object is a higher and better one. Aside from its humanity the plain purpose is to secure the appearance of the principal for trial, or sentence, as the case may be, in order that there shall be prompt and certain enforcement of the criminal law. If sureties who have contracted and have it in their power to insure the appearance of their principal at the time and place stipulated may be relieved because, after permitting his escape, they may have made diligent efforts to arrest, or may even have arrested and produced him, there would be little inducement to diligence on their part in the first instance, and the punishment and prevention of crime would be seriously impeded. Having this in mind, we are of the opinion that it was the intention of Congress to promote sound public policy by the requirement that there shall have been no wilful default of the party charged with the offense.

While it is of no importance in the view that we have taken of the case, it may be remarked that the facts stated in the affidavit regarding the tracing of the fugitive from place to place are vague and indefinite. If this were good ground for the exercise of the power of the court, the facts should be set out in detail, and not a conclusion therefrom. The same may be said of the vague allegation of the expenditure of "to wit, more than a thousand dollars," in efforts to trace and arrest the fugitive. Moreover, the surety in this case is one of those guaranty corporations which, it is a matter of common knowledge, undertake upon the payment of a premium to insure the performance of the obligation of their principal and to indemnify the obligee against failure therein, and generally, it is understood, require collateral security from the principal for their own indemnification.

In such cases it should affirmatively appear that there was no collateral taken; otherwise the relief of the surety might ultimately inure to the benefit of the fugitive principal.

As regards the second contention, that the court has no power over the judgment after the expiration of the term at which the forfeiture has been made final, the case before cited holds to the contrary. The same decision was made by the circuit court of appeals of the fourth circuit—one member of the court dissentng—in a case where the default of the principal had not been wilful, but was due to sickness, and there was an appearance and trial at the next term. As in this case, the application for relief was not made until the lapse of many terms. *United States* v. *Jenkins,* 100 C. C. A. 224, 176 Fed. 672, 20 Ann. Cas. 1255.

· If it was the intention of Congress that this power to remit a penalty might be exercised after the expiration of the term, when, according to the rule of the common law, the judgment passes beyond the control of the court, it would seem to savor of an attempt to confer an executive power upon the judiciary. However, as the question is not necessary to the decision of the case, we will express no opinion upon it.

For the reasons given, the judgment will be reversed, with costs.                                             *Reversed.*