**UNITED STATES v. CLATTERBUCK.**
**Petition of SEIDMAN et al.**
**No. 18248.**

District Court, D. Maryland.

Feb. 15, 1939.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md.

Harry Kairys, of Baltimore, Md., for petitioners.

CHESNUT, District Judge.

In the above case on the criminal docket, Harry and Rebecca Seidman have petitioned the court to relieve them from a bail forfeiture which was entered against them on September 21, 1936. The governing statute is United States Code, Title 18, § 601, 18 U.S.C.A. § 601, which reads as follows: "When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced." This statute was construed and applied recently by the Circuit Court of Appeals of this Circuit in United States v. Nordenholz, 95 F.2d 756. In the opinion in that case by Circuit Judge Northcott, it was held that the three conditions on which remission could be granted, (1) no willful default; (2) possibility of trial and (3) consistency with public justice, must be treated conjunctively, that is, all three must exist. In the present case, after hearing the testimony, there is no doubt that the second and third of the conditions have been met. The only question is whether the petitioners have sufficiently met the burden imposed upon them to show that the default of the traverser in not appearing at the trial when first set was not willful.

· The facts of the case as developed by the testimony in support of the petition were substantially as follows: The defendant in the criminal case, who gave his name as Clatterbuck, was arrested in February 1936 for violation of the internal revenue laws at or near GlenBurnie, Anne Arundel County, Maryland, and after hearing before United States Commissioner Cullen in Baltimore was held for action of the Grand Jury and released on bail in the amount of $1500 for his appearance before the District Court of the United States on "the first day of the next term thereof, to be begun and held at the City of Baltimore, Maryland, at 10 o'clock A. M., *or when summoned;* and from time to time thereafter to which the case may be continued." The present petitioners became sureties on his bail bond. It appears that the case was not presented to the Grand Jury until the following September when, on the 10th day of that month in the same year, he was indicted for unlawfully possessing untax paid whiskey, possession of an unregistered still and for unlawfully making and fermenting whiskey mash. The defendant's address as written in the recognizance by the Commissioner was GlenBurnie, Maryland. The case was first set for trial on September 14, 1936, the clerk having several days previously issued the customary notices which were sent by mail to the defendant at his only recorded address, and also to the sureties on the bail bond, notifying them the case was set for trial. The defendant not appearing, the case was postponed for one week to give the sureties an opportunity to produce the defendant. When the case was again called on September 21, 1936, the defendant again did not appear and the bail was forfeited.

The testimony on behalf of the petitioners further showed that the defendant, shortly after being held for the Grand Jury by the Commissioner, engaged competent counsel, Mr. Charles W. Main, and wrote him a letter dated March 18, 1936, offered in evidence, indicating defendant's desire to have the case promptly disposed of and giving his correct name as James Coakley, and his address, Beaver Dam, Virginia, RFD 4. The letter also indicated that the defendant would remain there until his trial and requested notice of the date thereof. Mr. Main had previously expressed

the opinion that the case would probably be called for trial in May of that year. When the case was set for trial in September Mr. Main wrote the defendant at the address given but received no reply. Apparently the sureties also wrote him at that address. Shortly after the bail had been forfeited the sureties paid the expenses for a visit by a deputy marshal to Virginia to find the defendant. The deputy marshal promptly made the trip and conferred with several members of the defendant's family at the only address given, and learned that the defendant had not been there for some weeks and was understood to be somewhere in the South employed on a truck. As soon as the sureties on the bond succeeded in communicating with the defendant he promptly thereafter voluntarily appeared in court on January 8, 1937, pleaded guilty and was sentenced to six months in jail and to pay a fine of $100 without further commitment in default of payment of the fine.

The delay in presenting the case to the Grand Jury was unusual and seems to have been due to inadvertence on the part of the Assistant United States Attorney to whom the case had originally been assigned for prosecution, due to some change in office routine which was put into effect about that time. Ordinarily criminal cases are presented very promptly to the Grand Jury in this District after action by the Commissioner, as the Grand Jury is customarily in session at least one day in every week.

It will be noted that the condition of the recognizance was that the defendant should appear in court on the first day of the next term, which, in this case, would have been the following Tuesday after February 28th (that being the beginning of the new March Term of court) "or when summoned". The practical application given to this latter phrase "or when summoned" is that the defendants are not expected actually to come to court for the trial of their cases until they are notified by the clerk; and it is the uniform practice when criminal cases are set for trial and the defendant is on bail, for the clerk to give several days advance notice by mail to both the defendant, according to his best known address, and to the sureties according to their address, both of which addresses usually appear on the recognizance. In the particular case the notices sent to the defendant in the name of Clatterbuck at GlenBurnie, Maryland, were both returned to the clerk undelivered. It is doubtful whether the defendant actually knew or realized that his address in the recognizance was Glen-Burnie. It appears that he gave a fictitious name to the Commissioner thinking to thereby relieve his family from unpleasantness in connection with his arrest, and his address of GlenBurnie having been written into the recognizance in the handwriting of the Commissioner probably as the only address known to him, that being the place where the offense was alleged to have happened. However, the defendant promptly employed reputable counsel and disclosed to him his real name and address and indicated a desire to have the case speedily disposed of as he would be unoccupied pending the trial. It is further indicated that the defendant did remain at the address given to his attorney awaiting trial for some months, but owing to the unusual procedural delay he seems to have left the home of his family to obtain work at a distance, and the letters notifying him of the time for trial several months afterwards in September accumulated at the address given by him without being forwarded to him. It further appears that promptly after learning that his case had been called for trial he voluntarily returned, pleaded guilty and was duly sentenced.

[3, 4] Under the circumstances the question presented is whether his default in appearing for trial in September was "willful" within the meaning of the statute. The word clearly implies an act done intentionally, knowingly and purposely. It has been said to mean a deliberate intention to do or refrain from doing some act. It is more than inadvertence. Cover v. Taliaferro, 142 Md. 586, 596, 122 A. 2; Lacey v. Louisville & Nashville R. Co., 5 Cir., 152 F. 134, 136. As used in this particular statute it has been said to mean "more than a default arising from ignorance, inexperience, inattention, thoughtlessness, or even carelessness and negligence, and that they indicate a default knowingly, intentionally and deliberately made." United States v. Smoller, D.C., 275 F. 1011, 1012. Of course where the defendant has absconded, or his failure to appear after due notice is unexplained, his default will be considered willful. United States v. Nordenholz, 4 Cir., 95 F.2d 756; Sun Indemnity Co. v. United States, 3 Cir., 91 F.2d 120; Fidelity & Deposit Co. v. United States, 5 Cir., 293 F. 575.

In United States v. Nordenholz, supra, where remission of the bail forfeiture

**300**

was held not permissible, it was said: "There was no attempt made to prove that the absence of Dempsey [the defendant] was not willful and the petition does not even allege that his absence was not willful and offers no explanation of his failure to appear, other than the allegation that the notices mailed to Dempsey were returned to the clerk of the court undelivered. This showing is clearly insufficient. There is no allegation in the petition that the bondsman made any effort to locate his principal and produce him, in compliance with the terms of the bond. * * * The failure of Dempsey to appear when required, unexplained, raises the presumption that his default was willful." [95 F.2d 758.] . The present case is, however, different on the facts, as here the sureties on the bond made every possible effort on their part to find and locate the defendant and to produce him at his trial, and actually succeeded, at their expense, in doing so within a few months. And they offered testimony which does fairly explain the defendant's failure to appear when the trial was set. As to the defendant's own conduct in the matter, I find from the testimony that while it may properly be considered that he was negligent in not keeping in closer contact with his counsel, there is some excuse for this in the unusual procedural delay in the prosecution of his case. The testimony sufficiently shows, I think, that his failure to appear promptly was due solely to his not receiving the notice that his case was set for trial. While he may properly be said to have been negligent in the matter, I find that it has been sufficiently shown that his default was not willful.

 Each case under this statute must be decided on its own facts. There is perhaps an insufficient appreciation by sureties of the obligation which they assume to produce their principal in bail bonds for trial when the case is first set and reasonable notice has been given them. To this end it is their affirmative duty to keep at all times in contact with their principal so that he will actually be produced for trial when notice is duly given. Therefore it ordinarily will not be a sufficient excuse for them, upon the non-production of the principal, to merely show that he did not receive the letter from the clerk giving notice of the date of the trial. It must be the active duty of the sureties to see that the defendant's address as given in the recognizance is a correct address and to keep the clerk advised

of any change in the principal's address if they wish to rely upon the sufficiency of the customary notice from the clerk. In legal theory, as evidenced by the formal language of the recognizance, the defendant is required to attend the court from day to day until his case is actually called for trial, and the nature of bail is that the custody of the defendant is shifted from the jailer to his sureties. Taylor v. Taintor, 16 Wall. 366, 371, 21 L.Ed. 287. The rigor of this rule has, however, been customarily relaxed under the modern prevailing practice, which is generally understood, that the defendant need not attend court from day to day but must appear when notified. It would be unreasonable in passing on this petition in this case to ignore this modern custom which makes for convenience. But granting the full force of this, it still remains the duty of both the principal and the sureties to appear in accordance with notice duly given by the clerk and mailed to the address of the parties as given to him. In the present case the error in the defendant's address as contained in the recognizance was not itself the cause of the delay because the defendant did take pains to give his correct address to his attorney, and apparently also to the sureties, or at least it was available to the sureties through the attorney. If the case had been brought on for trial with customary promptitude the defendant would doubtless have appeared as a result of the notices mailed to him by his attorney and the sureties in due course.

At the trial some hearsay statements of the defendant, who was not available as a witness, were admitted, over objection by the Assistant United States Attorney, as possibly only introductory to other competent evidence. I have disregarded this testimony in reaching my conclusion on the facts.

 On reviewing the papers it is noted that the petition for remission of the forfeiture was not filed until September 30, 1937, more than a year after the forfeiture and therefore long after the expiration of the term of court at which the forfeiture was entered. The question then arose as to whether the petition was not filed too late. The procedure for bail forfeiture in this district has from time immemorial been summary. Upon call of the defendant and his sureties, and the default in appearance of the defendant, after due notice to appear, the clerk enters judgment of forfeiture upon the order of the court. Ordinarily a

judgment may not be vacated on petition filed after the term except for fraud, accident or mistake. But on examining the decided cases, it is found that in this Circuit it was long ago held that the procedure under this particular statute was not within this general rule, and therefore the petition for remission could properly be entertained although filed after the term. United States v. Jenkins, 4 Cir., 176 F. 672. Like decisions are United States v. Traynor, D. C., 173 F. 114 (by Judge Sanford, then District Judge, later Associate Justice of the Supreme Court); Hunter v. United States, 10 Cir., 195 F. 253, 255; Griffin v. United States, D.C., 270 F. 263; Cf. Sun Indemnity Co. v. United States, 3 Cir., 91 F.2d 120; United States v. Von Jenny, 39 App. D.C. 377, 383. The tendency in modern judicial procedure is to minimize or abandon the significance of the mere expiration of the term of court, as no longer having the importance attached to it under other conditions prevailing at common law. See the new rules of Federal Civil Procedure, Rule 6(c), 28 U.S.C.A. following section 723c which however is not per se applicable here.

In this district it has been customary to entertain these petitions though filed after the term. See United States v. Nordenholz, 4 Cir., 95 F.2d 756. But it should be noted that the remission authorized by the statute is discretionary only, and if such a petition is inexcusably delayed it may be refused, especially where the lapse of time has operated to the prejudice of the Government. In the present case the delay is satisfactorily explained by counsel for the petitioners.

For these reasons the remission will be granted in this case, upon payment of the court costs by the sureties. Counsel may submit the appropriate order in due course.